[This opinion has been published in *Ohio Official Reports* at 75 Ohio St.3d 95.]

IN RE WILLIAM S.

[Cite as *In re William S*., 1996-Ohio-182.]

*Juvenile law—Custody—Termination of parental rights action—R.C. 2151.414(E)—Permanent custody may not be granted, when.*

Permanent custody may not be granted unless the trial court finds clear and convincing evidence that one or more of the eight enumerated factors in R.C. 2151.414(E) exist.

(No. 94-2068—Submitted December 12, 1995—Decided March 4, 1996.)

CERTIFIED by the Court of Appeals for Erie County, No. E-93-58.

_____

{¶ 1} Appellant, Erie County Department of Human Services, appeals the decision of the court of appeals which reversed the decision of the trial court. Appellee, Karen Storch, is the natural mother of minors William (born October 3, 1985), Edward (born July 17, 1987), Jane (born May 12, 1989), and Robert (born May 22, 1990). William Storch, Jr., the natural father of all four children and appellee's former husband, has been incarcerated in the state prison system since August 1990. His earliest possible release date is in 1997. In response to allegations of neglect, appellant first investigated the family situation in February 1990. Appellant referred the case to the Ohio Department of Health for home visits. Appellant's next contact with the family was in May 1990, upon neglect allegations brought by the local police department. Appellant's investigation substantiated the allegations of neglect. Appellant worked with appellee by providing homemaker services, protective day care and transportation. However, after a short time, Robert was evaluated as a "failure to thrive" child. Appellee voluntarily agreed to place Robert in the temporary custody of appellant for a thirty-day period. On July 6, 1990, Robert returned to the custody of appellee. Appellant continued to work

with appellee on her parenting and housekeeping skills, but her skills continued to be poor and inappropriate.

{¶ 2} On August 8, 1990, when Robert was found with cigarette burns on his toes, appellant petitioned the court for custody of the children. The court awarded custody to appellant which placed the three oldest children with their paternal grandparents and Robert temporarily with foster care. Subsequently Robert was placed with his paternal grandparents. On November 12, 1990, appellant developed a case plan, the goal of which was to reunite the family. The plan included relative placement, homemaker services, case management and protective day care.

{¶ 3} On February 6, 1992, appellant initiated this case by filing complaints for permanent custody. On April 2, 1992, appellant filed a case plan, the purpose of which was to reunite the family. The plan identified specific problems with appellee's parenting and housekeeping skills, including unsuitable housing, inadequate housekeeping skills, and failure to control the children's behavior. Appellee was cooperative in fulfilling the case plan requirements, but because of her lower intelligence she could not make significant progress in counseling and parenting. She was unable to understand the needs of children with specific problems.

{¶ 4} Because appellant believes that appellee has indicated a lack of commitment to the children and an unwillingness to provide an adequate permanent home for the children, it moved, on September 15, 1992 and on October 27, 1992, for permanent custody of the children. On July 8, 1993, the trial court granted permanent custody of the children to appellant. On January 27, 1994, the trial court, upon the father's request, entered findings of fact and conclusions of law. The trial court found that appellee is limited in her cognitive functioning and has little insight, if any, into her own plight or the needs and conditions of her children; has not provided stable and consistent housing both for herself and for her children; has

2

with minor exception never maintained gainful employment during her adult life; and is unable or unwilling to address the special needs of her children. The court concluded that appellee "is unable to provide an adequate permanent home for the children at the prsent [*sic*] time and in the foreseeable future and has failed for a period of years after the children's removal to remedy the conditions which prompted their removal." The court ordered the children to be placed in appellant's permanent care, custody and control. The court of appeals reversed.

**{¶ 5}** Finding its judgment in conflict with the judgment of the Ninth District Court of Appeals' decision in *In re Higby* (1992), 81 Ohio App.3d 466, 611 N.E.2d 403, the court of appeals entered an order certifying a conflict. This cause is now before this court upon our determination that a conflict exists.

_____

*Kevin J. Baxter*, Erie County Prosecuting Attorney, and *G. Stuart O'Hara, Jr.*, Assistant Prosecuting Attorney, for appellant.

*Erie County Public Defender's Office* and *Mary M. Bower*, for appellee.

*Ghada Halasa*, Guardian *Ad Litem*.

*Jeffrey D. Ginther*, urging reversal for *amici curiae*, John and Katherine Alexander, foster parents.

_____

**ALICE ROBIE RESNICK, J.**

**{¶ 6}** The issue certified for our review is whether, in a termination of parental rights action, R.C. 2151.414(E) permits a trial court to find that a child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents, absent a determination, by clear and convincing evidence, that one of the eight predicate findings in R.C. 2151.414(E) exists.

**{¶ 7}** Initially we note that in interpreting the statutory provisions pertaining to Juvenile Court, we must carry out the purposes of the statute as stated in R.C. 2151.01:

"The sections in Chapter 2151. of the Revised Code * * * shall be liberally interpreted and construed so as to effectuate the following purposes:

"(A)  To provide for the care, protection, and mental and physical development of children subject to Chapter 2151. of the Revised Code;

"(B)  To protect the public interest in removing the consequences of criminal behavior and the taint of criminality from children committing delinquent acts and to substitute therefor a program of supervision, care, and rehabilitation;

"(C)  To achieve the foregoing purposes, whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interests of public safety * * *."

**{¶ 8}** When a public children services agency files a motion for permanent custody, R.C. 2151.414(A) directs the court to conduct a hearing.  In order to terminate parental rights and grant permanent custody to the agency, R.C. 2151.414(B) requires that:

"* * * the court determine[], * * * by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:

"(1)  the child is not abandoned or orphaned and the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents;

"(2)  The child is abandoned and the parents cannot be located;

"(3)  The child is orphaned and there are no relatives of the child who are able to take permanent custody."

4

**{¶ 9}** R.C. 2151.414(E) sets forth guidelines for determining whether a child cannot be placed with either of his parents within a reasonable period of time or should not be placed with his parents:

"* * * [T]he court shall consider all relevant evidence.  If the court determines, by clear and convincing evidence, * * * that one or more of the following exist as to each of the child's parents, the court shall enter a finding that the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents:

"(1)  Following the placement of the child outside his home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly for a period of six months or more to substantially remedy the conditions causing the child to be placed outside his home.  In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties[;]

"(2)  The severe and chronic mental illness, severe and chronic emotional illness, severe mental retardation, severe physical disability, or chemical dependency of the parent makes the parent unable to provide an adequate permanent home for the child at the present time and in the foreseeable future;

"(3)  The parent committed any abuse as described in section 2151.031 of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date

that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;

"(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

"(5) The parent is incarcerated for an offense committed against the child or a sibling of the child;

"(6) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing;

"(7) The parent is repeatedly incarcerated and the repeated incarceration prevents the parent from providing care for the child;

"(8) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect."

{¶ 10} R.C. 2151.414(E) requires the trial court to find that the child cannot be placed with either of his or her parents within a reasonable time or should not be placed with the parents once the court has determined by clear and convincing evidence that one or more of the eight factors exist. Once the trial court finds from all relevant evidence that one of the eight factors exists, it then must consider whether permanent commitment is in the best interest of the child. R.C. 2151.414(B). Only then may it grant permanent custody of the child to the agency.

{¶ 11} By listing eight factors, the General Assembly contemplated the specific parameters which would allow the trial court to permanently terminate parental rights. The statute does not include discretionary language or language

that would allow the trial court discretion to consider other factors that would justify terminating parental rights. Appellant asserts that by directing the court to "consider all relevant evidence," the General Assembly intended that the court have the discretion to consider factors other than the eight specifically enumerated. However, we interpret this cited phrase as simply a direction to the trial court delineating the evidence that it may consider when determining the existence of any one or more of the eight factors. The phrase is not meant to give the trial court unbridled discretion to come up with its own factors that would justify terminating parental rights. If that had been the intention of the General Assembly, it would have concluded R.C. 2151.414(E) by stating, "and any other circumstance."

{¶ 12} In the case at bar, the trial court found by clear and convincing evidence that the children "cannot be placed with any one of their parents within a reasonable period of time and should not be placed with any one of them." The court listed two justifications for permanently terminating appellee's parental rights: (1) that appellee is unable to provide an adequate permanent home for the children, and (2) that appellee failed for a period of years after the children's removal to remedy the conditions which prompted their removal.

{¶ 13} The first reason given by the trial court does not clearly fall within any of the eight factors. Nowhere is it stated that "a parent is unable to provide an adequate permanent home." Since permanent custody is an extreme measure, the specific factor must be established by clear and convincing evidence. While factor eight uses the term "unwilling," it cannot be said that unwilling and unable are synonymous. Thus, the first basis given by the trial court is not an enumerated factor and cannot be relied upon.

{¶ 14} The second reason the trial court gave for the permanent termination of parental rights was, "[Appellant] failed for a period of years after the children's removal [from the home] to remedy the conditions which prompted the removal."

The present case was tried on the February 6, 1992 complaints, which indicated that removal from the home was necessary because of the abuse to Robert, represented by the cigarette burns inflicted upon him, and fear that the remaining children might be subject to similar abuse. This being the specific reason for the removal, it must then be determined whether the appellee has "*** failed continuously and repeatedly for a period of six months or more to substantially remedy the conditions causing the child to be placed outside his home." R.C. 2151.414(E)(1).

{¶ 15} The court of appeals observed that:

"At trial appellee attempted to show that the children were removed from the home as the result of all of the problems listed on the November 12, 1990 case plan. However, even though this plan was introduced into evidence, the testimony of the caseworker assigned to appellant's family at the time the children were removed clearly indicates that the reason for removal was the burn on Robert's toes and the concern that the other three children might be in danger of similar abuse should they remain in the home. This testimony is in conformity with other testimony that the original complaints which prompted removal cited Robert as abused and the other three children as neglected. It also conforms with logic in that the burn to Robert's toes is the only circumstance named in the November 1990 case plan which did not exist prior to the children's removal. Therefore, based on the evidence presented, the only reasonable conclusion which may be drawn is that the children were removed from the home because of the abuse to Robert, represented by the burns inflicted upon him, and the fear that the remaining children might be subject to similar abuse."

{¶ 16} The November 1990 case plan listing all four children dealt in part with the abuse of Robert and concern for the other children. Appellee took and apparently passed a polygraph regarding the burns, according to the testimony of her caseworker. Additionally, the caseworker testified that the appellee's

8

roommate at that time failed a polygraph concerning the cigarette burn incident. The roommate no longer shares appellee's residence. From the foregoing, apparently appellee's roommate caused the abuse and threat of abuse. Since she no longer resides with appellee, there can be found no clear and convincing evidence establishing that appellee failed to remedy the condition which led to the children's removal from the home. Resultantly, none of the eight enumerated factors of R.C. 2151.414(E) has been established in the case *sub judice.*

{¶ 17} We hold that permanent custody may not be granted unless the trial court finds clear and convincing evidence that one or more of the eight enumerated factors in R.C. 2151.414(E) exist.

{¶ 18} In conclusion, we also concur in the following observation of the court of appeals:

"Assuming for the sake of argument only, that evidence exists that appellant is incapable of coping with all four children together or the two oldest boys who may have severe learning disorders or behavioral problems, this should not serve to cause the removal of all four children from the natural mother. The worst accusations that have been made against appellant are that she is simply unable to cope with the special needs of her two oldest children, and that she is 'overwhelmed' with the responsibility of rearing all four children together. Judicial reaction to these accusations should be no greater than warranted, and judicial response should be the least intrusive that is available. Each child at issue here is an individual and should be treated as an individual."

{¶ 19} The judgment of the court of appeals is affirmed.

*Judgment affirmed.*

MOYER, C.J., F.E. SWEENEY and PFEIFER, JJ., concur.

DOUGLAS, J., dissents.

WRIGHT and COOK, JJ., separately dissent.

**WRIGHT, J., dissenting.**

{¶ 20} The majority finds that the eight statutory factors in R.C. 2151.414(E) are the only factors that a court can examine when determining custody in a matter such as this one. To the contrary, the plain language of R.C. 2151.414(E) requires courts to "consider all relevant evidence."[1] Indeed, the presence of any of the eight statutory factors merely compels a mandatory finding that the child should not be placed with his or her parents; it does not prevent a

---

1. R.C. 2151.414(E) provides:

"In determining at a hearing *** whether a child cannot be placed with either of his parents within a reasonable period of time or should not be placed with his parents, *the court shall consider all relevant evidence.* If the court determines, by clear and convincing evidence, *** that one or more of the following exist as to each of the child's parents, the court *shall* enter a finding that the child cannot be placed with either of his parents within a reasonable time or should not be placed with his parents:

"(1) *** [T]he parent has failed continuously and repeatedly for a period of six months or more to substantially remedy the conditions causing the child to be placed outside his home *** [;]

"(2) The severe and chronic mental illness, severe and chronic emotional illness, severe mental retardation, severe physical disability, or chemical dependency of the parent makes the parent unable to provide an adequate permanent home for the child at the present time and in the foreseeable future;

"(3) The parent committed any abuse as described in section 2151.031 of the Revised Code against the child, caused the child to suffer any neglect as described in section 2151.03 of the Revised Code, or allowed the child to suffer any neglect as described in section 2151.03 of the Revised Code between the date that the original complaint alleging abuse or neglect was filed and the date of the filing of the motion for permanent custody;

"(4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;

"(5) The parent is incarcerated for an offense committed against the child or a sibling of the child;

"(6) The parent is incarcerated at the time of the filing of the motion for permanent custody or the dispositional hearing of the child and will not be available to care for the child for at least eighteen months after the filing of the motion for permanent custody or the dispositional hearing;

"(7) The parent is repeatedly incarcerated and the repeated incarceration prevents the parent from providing care for the child;

"(8) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect." [Emphasis added.]

court from examining other factors. Further, the majority's narrow interpretation of R.C. 2151.414(E) does not accord proper weight to the overall purpose of R.C. Chapter 2151, namely, the care, protection and development of children.[2] Accordingly, I respectfully dissent.

        COOK, J., concurs in the foregoing dissenting opinion.

_____

---

2. R.C. 2151.01 states, in pertinent part:

"The sections in Chapter 2151 of the Revised Code *** shall be liberally interpreted and construed so as to effectuate the following purposes:

"(A)  To provide for the care, protection, and mental and physical development of children subject to Chapter 2151 of the Revised Code;

"(B)  To protect the public interest in removing the consequences of criminal behavior and the taint of criminality from children committing delinquent acts and to substitute therefor a program of supervision, care, and rehabilitation;

"(C)  To achieve the foregoing purposes, whenever possible, in a family environment, separating the child from its parents only when necessary for his welfare or in the interest of public safety[.]"