[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION AND JUDGMENT ENTRY
* * * * *
This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, which granted permanent custody of Brandon M. to the Lucas County Children Services Board ("LCCS"). Appellant, Penny M., mother of Brandon M.,[1] sets forth the following assignments of error:
"Assignment of Error No. 1
 "The trial court's decision to grant permanent custody of Brandon M. to L.C.C.S.B. abridged Appellant Penny M.'s right to both substantive and procedural due process of law guaranteed by the United States and Ohio Constitutions because no finding was made under Ohio Rev. Code § 2151.414(E).
"Assignment of Error No. 2
 "The trial court erred in granting permanent custody to LCCSB pursuant to Ohio Rev. Code § 2151.353(a)(4) when there was no showing that reunification efforts would be futile and there was no clear and convincing evidence that Brandon M. could not be placed with his mother within a reasonable amount of time.
"Assignment of Error No. 3
 "The trial court erred in assigning and failing to remove the minor child's Guardian ad Litem (sic) when said Guardian was unable to render an independent opinion due to representation of an individual adverse to the Mother, her boyfriend and her witness."
The following facts are relevant to this appeal. Brandon was born prematurely on October 4, 1996. Brandon was to be discharged from the hospital in December. On December 9, 1996, LCCS filed a complaint in dependency and sought permanent custody. In its complaint, LCCS alleged that appellant tested positive for marijuana when Brandon was born; that Brandon will require an apnea monitor and close medical supervision upon discharge; that appellant had a history of emotional problems as well as a history of being a victim of domestic violence; that appellant was awaiting hearing on probation violations; and that appellant has had a history of being unable to care for her children, having permanently surrendered other children to LCCS when LCCS filed for permanent custody and that legal custody of another child went to the paternal grandparents. Temporary custody of Brandon was awarded to LCCS following a shelter care hearing on December 9, 1996.
An adjudication hearing was held on February 20, 1997. The trial court adjudicated Brandon a dependent child. The disposition hearing started that same day and continued on March 11, 1997. Appellant was represented by counsel.
In a judgment entry journalized on March 24, 1997, the trial court awarded permanent custody of Brandon to LCCS, finding that Brandon could not be reunited with a parent within a reasonable period of time. On April 22, 1997, appellant filed a timely notice of appeal.
At the adjudication on February 20, 1997, a social worker at Riverside Hospital in Toledo testified about her contact with appellant. This social worker testified that she received a telephone call from appellant and that appellant told her that appellant thought she was four or five months pregnant and bleeding vaginally. Appellant had no prenatal care. The social worker urged appellant to go to an emergency room or see a physician. The social worker testified that appellant was admitted to the hospital three or four days after that phone call. The social worker testified that appellant's toxicology screen was positive for marijuana. Appellant admitted to marijuana use during her pregnancy. The social worker stated appellant never completed the CPR or apnea monitor training that was offered to her. CPR and apnea monitor training are an important part of pre-discharge teaching for parents of premature infants. The social worker opined that appellant's visits to Brandon throughout his stay in intensive care was very infrequent, noting that there would be a week or two with no contact.
At the adjudication, a LCCS caseworker who had worked with appellant since 1995 testified. This caseworker worked with appellant when appellant signed permanent surrenders of two other children and when legal custody of another child was transferred to the paternal grandparents in 1996.[2] This caseworker testified about the pattern of domestic violence in appellant's life as well as difficulty in contacting appellant because of appellant's lack of permanent housing. The caseworker also testified that although appellant was offered services in the case plan for domestic violence, appellant never followed through with these services. The caseworker also testified that appellant contacted her shortly before Brandon was to be discharged from the hospital and told her that appellant was in jail for a probation violation. Appellant was awaiting sentencing on her probation violation at the time of the adjudication[3] and admitted to her caseworker that appellant could be sentenced for at least a year. The caseworker testified that appellant was not employed and did not have other financial resources at the time the complaint was filed. At the conclusion of the adjudication, the trial court found Brandon to be dependent and the disposition hearing started.
A clinical therapist who performed a psychological evaluation of appellant in June 1996, at the request of LCCS, testified that he was only able to offer a provisional diagnosis because appellant failed to return for two sessions. He diagnosed appellant as a bipolar two disorder, which he described as recurrent major depressive episodes interspaced with periods of extreme impulsive activity. This disorder was originally called manic depressive disorder. The clinical therapist stated he had strong concerns that appellant was abusing alcohol or other substances based upon her score on one assessment tool. He stated that although he conducted his evaluation in 1996, that general personality characteristics would endure and, absent any evidence of change, he would consider his testing in 1996 to be valid in 1997.
Appellant's probation officer also testified at the disposition. He testified that appellant had been placed on three years probation for aggravated assault in 1995. He stated that appellant did not report on a regular basis during the first months of probation and then she absconded for eight months. Appellant also did not leave weekly drug screens as required and she did not pay court costs and restitution. Additionally she had not provided verification of employment and she did nothing in regard to substance abuse assessment and treatment, both conditions of probation.
The LCCS caseworker for appellant since 1995 also testified at the disposition in regard to the case plan services for appellant since May 1995. The caseworker testified that appellant was offered the following services: psychological evaluation and treatment, individual counseling, domestic violence counseling, and case management. The caseworker also testified that appellant needed a case manager in order to get court diagnostic treatment but appellant did not follow through with this. Appellant also did not follow through with dealing with her drug and alcohol problems; appellant was supposed to make an appointment with Compass, a LCCS approved agency. The caseworker also testified that appellant moved frequently and often the caseworker was unable to locate her; the caseworker testified that appellant relied upon others, mainly men, for housing. The caseworker testified that appellant's current boyfriend admitted to being in jail for a year and one-half for rape. The caseworker stated that appellant was frequently a "no-show" for office visits; appellant also did not come to a staffing on November 7, 1996 when decisions and recommendations were going to be made in regard to Brandon. In regard to visitation with Brandon, the caseworker testified that during the month prior to the hearing, appellant had canceled visitation three times, twice so close to the visitation that someone had already gone to pick Brandon up for the visit. The caseworker testified that appellant could not visit Brandon without supervision because appellant had not completed CPR and apnea training. The caseworker also testified that Brandon was placed with "legal risk adoptive parents" directly from the hospital. The caseworker explained that it is called a legal risk home because if the court decides for permanent custody, Brandon would already be in a home in which he could stay for life. The caseworker testified that Brandon, born weighing one pound, thirteen ounces, now weighs over ten pounds; his legal risk parents follow through with the doctors and keep up with his special needs. The caseworker testified that would be in Brandon's best interest to stay in that home and be adopted.
When the disposition hearing continued on March 11, 1997, a male registered nurse testified on appellant's behalf. After Brandon was born, appellant began living in this individual's house where her boyfriend lived. This witness testified that the seven year old son of appellant's boyfriend visits every weekend and he has observed appellant appropriately playing and interacting with this boy. This individual denied witnessing any episodes of domestic violence between appellant and her boyfriend. He opined that he saw no danger in appellant being reunified with Brandon. He testified that neither the guardian adlitem nor anyone from LCCS had contacted him about appellant. He stated that appellant recently took an apnea monitor course. On cross-examination, this witness admitted that the seven year son of appellant's boyfriend was accused of inappropriately touching the neighbor's children. He admitted that he did not know that appellant used marijuana around the time Brandon was born.
The guardian ad litem[4] filed a written report on February 6, 1997, in which he recommended that it would be in the best interests of Brandon for his permanent custody to be awarded to LCCS. The guardian ad litem was questioned by appellant's attorney, the attorney for LCCS and the court. The guardianad litem testified that his recommendation would be the same after hearing the testimony presented at the hearing. The guardian ad litem based his recommendation on appellant's lack of addressing the serious problems in her life. The guardianad litem acknowledged that he had previously represented the mother of appellant's boyfriend's seven year old boy in a custody dispute three to four years before and denied any conflict in being the guardian ad litem for Brandon.
R.C. 2151.414(E) requires the trial court to find that the child cannot be placed with either of his or her parents within a reasonable time or should not be placed with the parents once the court has determined by clear and convincing evidence that one or more of the twelve factors exist. Once the trial court finds from all relevant evidence that one of the twelve factors exists, it then must consider whether permanent commitment is in the best interest of the child. R.C. 2151.414(B). Only then may it grant permanent custody of the child to the agency.
On appeal, this court must determine if the lower court complied with the statutory requirements of R.C. 2151.353 and2151.414 and whether there was sufficient evidence to support a finding by clear and convincing evidence that one or more of the factors listed in R.C. 2151.414(E) exist. Permanent custody may not be granted unless the trial court finds clear and convincing evidence that one or more of the enumerated factors in R.C.2151.414(E) exist. In re William S. (1996), 75 Ohio St.3d 95, 101. Clear and convincing evidence is that level of proof which would cause the trier of fact to develop a firm belief or conviction as to the facts sought to be proven. Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus. The trial court must consider the best interests of the child by examining the factors listed in R.C. 2151.414(D). An appellate court will not reverse a trial court's determination concerning parental rights and child custody unless the determination is not supported by sufficient evidence to meet the clear and convincing standard of proof. In re Adoption of Holcomb (1985), 18 Ohio St.3d 361, 368
and In re Ball (1982), 5 Ohio App.3d 56, 58.
In her first assignment of error, appellant argues that the trial court's decision to grant permanent custody abridged her right to substantive and procedural due process because no finding was made under R.C. 2151.414 in the judgment entry. This court finds no merit in this assignment of error.
The statute cited by appellant generally mandates findings of fact and conclusions of law only upon a timely request. R.C. 2151.414(C) which specifically governs the permanent custody motion in the case sub judice requires a timely request. The record sub judice unambiguously demonstrates appellant made no written or oral request for findings of fact or conclusions of law prior to the permanent custody hearing, the juvenile court's judgment granting permanent custody to LCCS or anytime thereafter. As a result, appellant has failed to exemplify any error. Pettet v. Pettet (1988), 55 Ohio App.3d 128,130.
Furthermore, in In re Covin (1982), 8 Ohio App.3d 139,141, in referring to an earlier version of the statute, the court stated:
 "R.C. 2151.414(A) lists numerous determinations to be made by the lower court during a hearing upon a motion for permanent custody. The statute, however, does not require these determinations to be specifically listed in the lower court's judgment entry, and thus the failure to do so is not error. Such determinations would be appropriately included within the court's findings of fact and conclusions of law if they were requested by a party below."
Furthermore, the trial court did state on the record his basis for the award of permanent custody. The trial court cited that appellant had neither stable housing nor employment, factors falling within R.C. 2151.414(4) and (12).
Accordingly, appellant's first assignment of error is found not well-taken.
In her second assignment of error, appellant argues that the trial court erred in granting permanent custody to LCCS when there was no showing that reunification efforts would be futile and when there was no clear and convincing evidence that Brandon M. could not be placed with appellant within a reasonable amount of time. This court finds no merit in this assignment of error.
This court set forth above the standard of review in a parental termination case. Upon consideration of the law and of the entire record of the proceedings in the trial court, this court finds that there was clear and convincing evidence presented at the hearing to support the trial court's decision. Accordingly, the evidence clearly supports the award of permanent custody that was entered by the trial court and appellant's second assignment of error is found not well-taken.
In her third assignment of error, appellant argues that the trial court erred in assigning and failing to remove the minor child's guardian ad litem due to the guardian ad litem's prior representation of another individual, the mother of appellant's boyfriend's son. Appellant alleges that a conflict of interest existed because the guardian represented the mother of appellant's boyfriend's child in a custody dispute between appellant's boyfriend and the mother of his child. This court finds no merit in this assignment of error.
Upon a thorough review of the record in the case subjudice, this court finds that no conflict of interest existed for the guardian ad litem. The prior representation occurred three to four years prior to the guardian's assignment in this case and appellant has not shown that the guardian ad litem was unable to faithfully discharge his duties in this case. Furthermore, even if a guardian ad litem neglects his duties and fails to conduct an independent investigation, it will be considered harmless error when, during trial, the information is presented which could have been presented by the guardian ad litem.
Accordingly, appellant's third assignment of error is found not well-taken.
The decision of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the court costs of this appeal.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
 ________________________________ Peter M. Handwork, P.J.
JUDGE
 ______________________________ George M. Glasser, J.
JUDGE
 ______________________________ Melvin L. Resnick, J.
JUDGE
CONCUR.
[1] The alleged father signed a permanent surrender to LCCS and is not a party to this appeal.
[2] Appellant also signed permanent surrenders to LCCS for two other children: one in 1989 and another in 1992.
[3] At the disposition hearing, appellant's counsel stated that appellant's probation had not been revoked.
[4] This same individual had been the guardian ad litem for three of appellant's other children.