Appellant, Crystal Boswell, appeals from a Butler County Court of Common Pleas, Juvenile Division, decision granting permanent custody of her minor child, Brian Boswell ("Brian"), to appellee, Butler County Children Services Board ("BCCSB"), and divesting her of her parental rights. We affirm.
On August 26, 1996, appellant contacted BCCSB and signed a voluntary agreement for the care of Brian. Appellant was eighteen years old, and Brian was six months old. Appellant had moved to Ohio from California three weeks before and was unable to care for Brian because she did not have housing or a job. The following day, BCCSB filed a complaint alleging that Brian was a dependent child pursuant to R.C. 2151.04.
At the time the complaint was filed, BCCSB explained to appellant that she had to find housing and employment before she would be allowed to regain custody of Brian. BCCSB received reports from Children's Protective Services in Kern County, California regarding appellant's care of Brian while in California. As a result, BCCSB added parenting classes to the reunification plan developed to effectuate Brian's return to his mother. A shelter hearing was held on September 6, 1996, wherein the juvenile court granted BCCSB temporary custody of Brian pending further investigation and appellant's meeting the conditions set by BCCSB in the reunification plan. Another hearing was held on September 11, 1996, which appellant did not attend, wherein Brian was adjudicated a dependent child by default pursuant to R.C.2151.04.[1]
During the following months, appellant refused to comply with the reunification plan designed by BCCSB. Appellant refused to attend parenting classes, even when ordered to do so by the juvenile court. She also missed several visitation appointments. Appellant failed to comply with the order of the juvenile court and the reunification plan requirements that she find stable housing and employment. From August to November 1996, appellant lived in a number of different residences. A visit to one of these residences on November 1, 1996 showed the rooms to be dirty and cluttered. Appellant was ordered to clean up the residence for a follow-up visit, but she was not home when the case worker returned. During this time, appellant was involved in at least one domestic altercation with a boyfriend. She also failed to maintain a job for more than a few weeks.
In November 1996, appellant returned to California. Appellant did not tell the case worker she had left until after arriving in California. Two review hearings were later held in December 1996 and March 1997, neither of which appellant attended. On March 19, 1997, BCCSB filed a motion for permanent custody, which was later amended on June 15, 1997.
Appellant returned to Butler County, Ohio in May 1997 to work toward reuniting with Brian. A hearing was held on June 17, 1997, during which BCCSB requested a six month continuance so that appellant could re-establish herself in the community and complete the required services. The juvenile court granted the continuance, and again ordered appellant to retain stable housing and employment. The juvenile court also ordered appellant to attend parenting classes at Catholic Social Services, to receive counseling at Butler County Mental Health, and to complete a diagnostic examination at Children's Diagnostic Center ("CDC") to determine if any other services were necessary. Appellant failed to attend either the parenting classes or individual counseling, and she walked out of the CDC examination.
Even though appellant failed to complete the CDC evaluation, the examiner, Dr. Charles Lee, M.D., opined that appellant was "a rather self-centered individual who can be adroit at manipulating others to the end of securing attention and affection. Her actions will tend to be short-sighted, impetuous, and stimulus-seeking." It was clear to Dr. Lee that appellant felt that Brian should be returned to her only on her terms, even though it was unlikely that she could provide a secure and nurturing environment in the foreseeable future.
Appellant also failed to gain stable employment or housing. Appellant claimed to have difficulty keeping a job because she did not have proper identification. Appellant quickly found one job which she left because she did not get along with her boss. Since that time, appellant has been employed sporadically, but at the final hearing in this case on December 8, 1997, was unemployed due to being pregnant. Appellant has resided at her stepmother's residence since returning from California, but has spent most of her time at her boyfriend's apartment. She also has been involved in more than one altercation since her return from California.
Concerns about Brian's health were raised throughout the proceedings. When BCCSB first obtained custody of Brian, it was noticed that he had a "flat head." The back of his head was extremely flat due to inactivity and spending too much time on his back. Brian also showed a five month delay in all areas of development caused by a lack of stimulation. He has yet to fully recover from the delay, even with significant care. Brian also has a "frogging of the legs," in that his legs are not properly developed, and his right hip rotates outward. This condition is also due to a lack of activity. In spite of these problems, Brian has responded well to foster care. He is making significant improvements in most areas, and shows an attachment to his foster family, which has been approved as appropriate placement for Brian and has indicated a desire to adopt him.
On December 8, 1997, the juvenile court held a permanent custody hearing. BCCSB presented testimony from the case workers who worked with appellant and Brian. The agency also presented detailed social summaries which recorded the actions BCCSB had taken in Brian's case, as well as appellant's failure to comply with the reunification plan and court orders. Appellant testified and presented testimony from friends and family, all of whom agreed that appellant had not fulfilled the case management conditions. Appellant also admitted to smoking marijuana while pregnant with Brian, but believed there was nothing wrong with such conduct.
On February 5, 1998, the juvenile court filed its final order granting BCCSB's motion for permanent custody. The juvenile court found by clear and convincing evidence that appellant had voluntarily given up custody of Brian, had refused to comply with the reunification plan developed by BCCSB, and had consistently failed to keep appointments to visit Brian. The court considered Brian's physical condition and delayed development and the progress he has made since he has been in foster care. The juvenile court also considered appellant's inability to establish a stable household and remain employed.
The juvenile court found that the best interest of Brian was served by granting permanent custody to BCCSB. The court further found that BCCSB had used reasonable efforts to reunite appellant with Brian, but that Brian could not be placed with appellant and that there was a substantial probability that Brian would be adopted. The court then ruled that BCCSB would be given permanent custody and that appellant's parental rights would be terminated. This timely appealed followed.
As her sole assignment of error, appellant argues that the juvenile court erred to her prejudice by granting permanent custody of Brian to BCCSB. Appellant asserts that she properly refused to comply with the BCCSB unification plan because BCCSB had failed to make reasonable efforts to implement the plan. We disagree.
The juvenile court may grant permanent custody to an agency if the court finds, by clear and convincing evidence, that the best interest of the child warrants a grant of permanent custody, and that the child cannot be placed with either parent within a reasonable time. R.C. 2151.41.4(B)(1); In re Egbert Children (1994), 99 Ohio App.3d 492, 295. In determining the best interest of a child, R.C. 2151.41.4(D) provides that the juvenile court must consider all relevant factors, including the following:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
(2) The wishes of the child * * *;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. A reviewing court will reverse, as a matter of law, a finding by the trial court that the evidence was clear and convincing only if there is a sufficient conflict in the evidence presented. Cross, 161 Ohio St. at 479. When the evidence considered pertains to specific statutory findings which the trial court is required to make, the reviewing court must look to see whether the trial court followed the enumerated factors in making its determination, or whether the trial court abused its discretion by deviating from the statutory criteria. See In re William S. (1996), 75 Ohio St.3d 95, 99.
In the present case, in determining Brian's best interest, the juvenile court considered Brian's interrelationship with appellant and his foster parents. The juvenile court found no reasonable basis to conclude that a strong bond existed between Brian and appellant. Appellant refused to develop a bond with Brian, as evidenced by her missing numerous visits to see Brian and the fact that there was little interaction between them. Thus, the juvenile court found that appellant had little concern for reuniting with Brian unless it was on her own terms. Further, the juvenile court considered appellant's return to California for six months during which she never made any attempts to have contact with Brian.
The juvenile court also considered Brian's relationship with his foster parents and found that they provided a stable and nurturing environment for Brian. While in the care of his foster family, Brian has made significant strides in overcoming his developmental delays and physical condition. Brian has also become more communicative and active through his interaction with his foster parents and siblings.
The juvenile court also examined appellant's conduct throughout the present proceedings in making its determination. Appellant voluntarily relinquished custody of Brian to BCCSB, but then refused to comply with the conditions of the reunification plan to create a stable and nurturing environment for Brian. Appellant failed to attend parenting classes or individual counseling. In addition, she walked out of a CDC evaluation which the juvenile court thought necessary to ensure that appellant was given all necessary aids in reuniting with Brian. Appellant has yet to find a stable residence and has consistently failed to maintain employment.
In addition to determining Brian's best interest, the juvenile court is required to assess whether Brian can be placed with appellant within a reasonable time or not at all. R.C. 2151.41.4(B)(1). In making this determination, the court is guided by a variety of factors set forth in R.C. 2151.41.4(E), including:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
* * *
 (4) The parent has demonstrated a lack of commitment toward the child by failing to regularly support, visit, or communicate with the child when able to do so, or by other actions showing an unwillingness to provide an adequate permanent home for the child;
* * *
(12) Any other factor the court considers relevant.
The record is clear that appellant was given every opportunity to reunite with Brian. She was given the benefit of free counseling and parenting classes and was offered numerous opportunities to maintain her relationship with Brian. Instead, appellant refused to participate in the programs offered by BCCSB and missed many scheduled visits with Brian. Furthermore, she has failed to establish a stable home and has not demonstrated any ability to maintain a job. This lack of effort demonstrates that appellant "has failed continuously and repeatedly to substantially remedy the conditions" which forced her to give Brian to BCCSB.
There was considerable testimony from social workers and Dr. Lee, all of whom indicated that appellant was unwilling or incapable of improving her situation. Dr. Lee stated that appellant had demonstrated an unwillingness to take responsibility for her situation and that there was no reasonable time in which appellant would be capable of parenting Brian. Other testimony established that appellant refuses to admit that Brian has any developmental delays or requires special care. Testimony also established that Brian's problems stem from appellant's failure to provide an active and nurturing environment for Brian. Despite appellant's inadequate care, Brian has made significant improvements in overcoming his developmental and physical condition through foster care and therapy.
Appellant's continued failure to care for Brian led to numerous concerns about her lifestyle and its affects upon Brian. Children's Protective Services in Kerns County, California reported concerns over appellant's failure to properly care for Brian and provide a safe and stable household. In Ohio, appellant willingly gave Brian to BCCSB and then refused to alleviate the conditions which led her to take such action. Appellant also willingly returned to California for six months and did not attempt to make contact with Brian in that time. In addition, she was unconcerned about having smoked marijuana while pregnant with Brian.
When Brian was in her care, appellant failed to provide a stimulating environment leading to his physical problems and slow development. Even after this was pointed out to appellant, she refused to change how she interacted with Brian. This lack of participation and inability to provide a healthy, safe, and nurturing home for Brian makes it clear that Brian would continue to suffer severely if returned to appellant. After considering appellant's inability to deal with her unstable lifestyle, the juvenile court held that Brian could not be returned to appellant's custody now or within a reasonable time.
The juvenile court also considered the progress that Brian has made since being in foster care. The foster family has shown a great deal of affection and concern. Brian has made significant strides in overcoming his slowed physical and developmental growth. The juvenile court found that a strong bond has developed between Brian and his foster family and that the family is seeking to adopt Brian. The foster family has also demonstrated a willingness to work with Brian and BCCSB to help him further recover from his past condition.
The record supports the juvenile court's holding that appellant refuses to lead a responsible lifestyle and that appellant is unable to provide a safe and stable home for Brian. We therefore conclude that the juvenile court's decision to grant permanent custody to BCCSB was supported by clear and convincing evidence. We further find that the juvenile court properly determined that it was in the best interest of Brian to grant permanent custody to BCCSB. Accordingly, appellant's sole assignment of error is overruled.
Judgment affirmed.
YOUNG, P.J., KOEHLER and POWELL, JJ.
[1] R.C. 2151.04(C) defines "dependent child" to include any child: Whose condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship.