DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, that terminated the parental rights of appellants Michelle C. and Sherman C. For the reasons set forth below, the judgment of the trial court is affirmed.
 {¶ 2} The record reflects that appellant Michelle C. is the mother of all eight children involved in this appeal. Appellant Sherman C. is the father of five of the children (Cameria, Camill, Sherman, Matthew and Mattie) and the alleged father of two others (Kuashean and Angelica). Genetic testing shows that Gabrielle is the child of Melvin M., who has not appealed.
 {¶ 3} Appellants set forth two assignments of error:
 {¶ 4} "I. That the juvenile court erred in accepting mother's stipulation as to permanent custody, as mother was not fully informed of her rights, and was forced into the stipulation of awarding permanent custody to the agency.
 {¶ 5} "II. That the juvenile court erred in that the evidence lacked the clear and convincing standard that the minor children could not be placed with Sherman [C.], father, within a reasonable period of time."
 {¶ 6} Appellee Lucas County Children Services ("LCCS") first became involved with this family in 2003, due to concerns of domestic violence, substance abuse, neglect, sexual abuse, excessive physical discipline, medical neglect and unsanitary housing conditions. The eight children ranged in age from three to ten years old, including two sets of twins. On March 28, 2003, the Lucas County Juvenile Court issued an ex parte order granting the agency's request for immediate shelter care custody of the children. On March 31, 2003, LCCS filed a complaint in dependency and neglect. The agency alleged a history of domestic violence between the parents. It also alleged that during one incident Kuashean, then ten years old, was grabbed by the throat, held against a wall and thrown onto a couch by one of his parents. LCCS alleged Sherman C. had a history of untreated alcohol abuse and that both parents were hostile and uncooperative with the agency's attempts to meet with them. Interim temporary custody was given to the agency.
 {¶ 7} When LCCS filed an amended complaint and a motion for an emergency no-contact order, another shelter care hearing was held. In the amended complaint, the agency alleged that since the original filing, it obtained a great deal of additional information. The complaint alleged seven-year-old Angelica disclosed she had been sexually abused by her father with her mother present and that her parents told her it was a secret and not to tell anyone. Angelica was examined by a doctor and found to have an injury consistent with sexual abuse. The agency further alleged the children reported regularly being physically disciplined with extension cords, sticks and spankings on their bare skin hard enough to leave marks. Several children revealed they were told not to discuss any of these events with the appropriate authorities. Appellants also had not followed through with medical treatment for Camill, who was diagnosed with ODD, bipolar disorder and ADHD. The complaint also alleged the family home was filthy with an inadequate number of beds for the adults and children. At the conclusion of the hearing, the magistrate issued a no-contact order.
 {¶ 8} The matter proceeded to adjudication on May 20, 2003. Appellant father, Sherman C. ("father"), did not attend but was represented by counsel. Mother was present with counsel. Several amendments were made to the complaint before the hearing proceeded. Mother then stipulated to facts as read into the record and the magistrate made a finding of abuse as to Angelica and findings of dependency and neglect as to all of the children.
 {¶ 9} On September 7, 2004, LCCS filed a motion for permanent custody as to all of the children. The matter proceeded to final hearing on the motion on October 7, 2005. Mother was present with counsel. The court noted that service was perfected on father, who was represented by counsel but not present. LCCS informed the court that the parties present had reached an agreement to stipulate as follows: (1) pursuant to R.C. 2151.414(E)(1), there was a failure to remedy the problems which initially caused the children to be removed from the home; (2) the children had been in the temporary custody of LCCS for more than 12 of the past 24 months; (3) the children could not or should not be returned to the care of either parent at that time and that it is in the best interest of the children to award permanent custody to LCCS and (4) LCCS has made reasonable efforts to finalize the permanent plan for the children. The children's guardian ad litem indicated the agreement was acceptable to her; the children's attorney expressed reservations because the children had indicated a desire to return to their mother. The trial court then inquired of mother regarding her understanding of the agreement and her willingness to enter into it. Mother indicated she understood the agreement would result in the court granting permanent custody of her children to LCCS. She also indicated she understood the rights she was giving up by entering into the agreement and said she was satisfied with her attorney's representation. She further stated she was not under the influence of drugs or alcohol and had not been promised anything in exchange for her agreement or forced into the decision. Finally, she indicated she did not have any questions of the judge. The stipulations were formally placed on the record. The trial court then found that the stipulations were in the best interest of the children. Further, the court found there was clear and convincing evidence that, despite reasonable efforts by the agency to prevent the removal of the children from the home, the children could not and should not be returned to their mother and that it was in their best interest to grant permanent custody to LCCS.
 {¶ 10} With regard to the two fathers, appellant Sherman C.'s attorney stated it had been eight months since she had heard from her client despite numerous attempts to contact him in Indiana, where he was serving time in a work-release program. The agency informed the court that service had been perfected on both fathers. Counsel for Melvin M., father of Gabrielle, stated her secretary spoke to her client by phone and informed him of the hearing, stressing it was important that he attend. She also sent him a letter requesting a meeting prior to the hearing but did not receive a response. The trial court then heard evidence as to both fathers. In its written judgment entry, the trial court found that both fathers had abandoned their children as defined in R.C. 2151.01(C).
 {¶ 11} The findings made by the trial court at the hearing were set forth in a judgment entry filed November 4, 2005.
 {¶ 12} In the first assignment of error, mother asserts the trial court erred by accepting her stipulation as to permanent custody. She argues she was not fully informed of her rights and was forced into the stipulation. This court has thoroughly reviewed the transcript of the hearing in which mother entered her stipulation. The record belies her claims. As summarized more fully above, the trial court meticulously informed mother of the rights she was giving up as a parent and carefully questioned her to ascertain that she was making the decision knowingly and voluntarily. The court explained clearly that she would be surrendering all parental rights and her children would be adopted. Mother indicated she had not been threatened or coerced and was not under the influence of any drugs or alcohol at that time. This assignment of error has no basis in the record and is not well-taken.
 {¶ 13} In the second assignment of error, father Sherman C. asserts the trial court lacked clear and convincing evidence the children could not be placed with him within a reasonable time. He asserts he has shown "clear commitment" to his children by completing the diagnostic assessment required by LCCS and states he completed domestic violence and substance abuse programs while incarcerated.
 {¶ 14} In granting a motion for permanent custody, the trial court must find that one or more of the conditions listed in R.C.2151.414(E) exist as to each of the child's parents. If, after considering all relevant evidence, the court determines by clear and convincing evidence that one or more of the conditions exists, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(B)(1). Further, pursuant to R.C. 2151.414(D), a juvenile court must consider the best interest of the child by examining factors relevant to the case including, but not limited to, those set forth in paragraphs (1)-(5) of subsection (D). Only if these findings are supported by clear and convincing evidence can a juvenile court terminate the rights of a natural parent and award permanent custody of a child to a children services agency. In re William S. (1996),75 Ohio St.3d 95. Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established.Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 15} In its judgment entry, the trial court found that Sherman C. has been repeatedly incarcerated, which has prevented him from providing care for the children. Upon consideration of the pleadings, motions and testimony, the court further found as follows: father had been incarcerated for the majority of the life of the case; he failed to complete court-ordered services; he had not had contact with his children for the past nine months and, after being released from his most recent incarceration in March 2005, attended only one visitation with them; he had made no attempts to contact the caseworker in order to see his children and that LCCS did not know of his whereabouts. The trial court further found that he had abused or neglected his children. Finally, the court determined that the seriousness and nature of the abuse, or the likelihood of a reoccurrence, made the children's placement with him a threat to their safety.
 {¶ 16} Based on the record before this court, father's actions can in no way be construed as demonstrating a "clear commitment" to his children. The LCCS caseworker testified that although father completed a mental health diagnostic assessment in March 2004, he was released as non-compliant in June 2004. She further testified that since his release from his most recent incarceration in March 2005, he had made no attempts to initiate services or visitation with his children and his whereabouts were unknown. Even after being accused of molesting his daughter, he failed to avail himself of services that might have lessened the likelihood of any reoccurrences of that behavior. He told the caseworker he had attended some classes while in prison, but the record contains no documentation of that. Based on our review of the record, we find that the trial court's decision was supported by clear and convincing evidence and that the trial court did not err by terminating the parental rights of appellant Sherman C. Accordingly, the second assignment of error is not well-taken.
 {¶ 17} On consideration whereof, this court finds that substantial justice was done the parties complaining and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellants are ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4, amended 1/1/98.
Pietrykowski, J., Singer, P.J., Parish, J., concur.