[Cite as *In re D.S.*, 2022-Ohio-3313.]

STATE OF OHIO       )           IN THE COURT OF APPEALS
                        )ss:        NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT     )

IN RE: D.S.
       L.S.

C.A. Nos.      30224
                    30241
                    30242

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE Nos.    DN 19 11 0913
                  DN 19 11 0914

DECISION AND JOURNAL ENTRY

Dated: September 21, 2022

CALLAHAN, Judge.

**{¶1}** Appellants, L.P. ("Mother") and D.S. ("Father"), appeal from a judgment of the Summit County Court of Common Pleas, Juvenile Division, that terminated their parental rights and placed their two minor children in the permanent custody of Summit County Children Services Board ("CSB"). This Court affirms.

I.

**{¶2}** Mother and Father are the biological parents of D.S., born February 27, 2018; and L.S., born October 26, 2019. On November 12, 2019, CSB filed complaints, alleging that D.S. and L.S. (originally identified as L.P.) were dependent children because Mother brought the children to the hospital and reported that she was having thoughts of suffocating and/or harming newborn L.S. ever since she brought the child home from the hospital. Mother also had a long

history of problems with her mental health, substance abuse, and domestic violence, which had caused her to lose legal custody of three older children several years earlier.

{¶3} The juvenile court later adjudicated the children dependent and placed them in the temporary custody of CSB. Because Father's paternity was judicially determined after the initial case plan was filed, CSB later filed an amended case plan to add services for Father. The case plan requirements for both parents required them to engage in mental health and substance abuse assessments and treatment; establish and maintain safe and stable housing; and otherwise demonstrate that they could meet the basic needs of the children.

{¶4} There is little evidence in the record pertaining to the parents' case plan compliance because they failed to maintain consistent contact with the caseworker or guardian ad litem and refused to sign information releases. The agency regularly reached out to the parents via phone and e-mail, but they often did not respond, or their phone numbers were no longer working. Mother apparently maintained the same e-mail address throughout this case, but she only sporadically responded to e-mail messages from the caseworkers, the guardian ad litem, and the foster parents.

{¶5} During February 2020, Mother informed the caseworker that Father had shattered the windshield of her car with a brick while she was driving, which terrified her. Consequently, a domestic violence component was added to the case plan. Mother told the caseworker that she was moving away from Father, but they apparently continued to reside together.

{¶6} Father refused to comply with the requirements of the case plan because he insisted that he did not need any ongoing services. He informed the caseworker that he sought out mental health treatment when he needed it. Father was hospitalized for psychiatric treatment five times

during a two-month period, but he never followed the discharge instructions for ongoing outpatient treatment after he was released from the hospital.

{¶7} During the first several months of this case, while the parents were living in this area, they failed to visit the children consistently. The COVID pandemic prevented in-person visits for approximately two months between March and May 2020, but the parents did not visit consistently when in-person visits were scheduled. They missed so many visits that CSB later stopped scheduling visits unless the parents would call to schedule a visit, which they did not do.

{¶8} Several months into this case, the caseworker was informed that the parents had gone to Las Vegas for a vacation. By August 2020, however, he learned that they were living there and did not plan to return to this area. Consequently, the caseworker arranged for them to visit the children remotely, but they did not do so during the following year. The caseworker also encouraged them to engage in reunification services in Las Vegas. Although the parents informed the caseworker that they were engaging in services, they did not sign information releases or otherwise verify to CSB that they were involved in any mental health or substance abuse treatment or other reunification services throughout this case.

{¶9} During February 2021, following a review hearing, the magistrate found that the parents had not had any contact with the caseworker for more than five months and had not visited the children for more than seven months. Shortly afterward, CSB moved for permanent custody of both children.

{¶10} The matter proceeded to a final hearing during December 2021. The parents were represented by counsel but did not appear for the hearing in person or remotely via the Zoom link they had been sent. Their attorneys did not know why the parents failed to appear and explained their attempts to reach out to their clients about appearing via Zoom. Consequently, the parents

did not testify or present any evidence on their own behalf. The primary evidence presented at the hearing about the parents came from evidence about their limited contact with the caseworkers, foster mother, and the guardian ad litem.

{¶11} Following the final hearing, the trial court terminated parental rights and placed D.S. and L.S. in the permanent custody of CSB. Mother and Father separately appealed and their appeals were later consolidated. They each raise one assignment of error, which this Court will address together because they are closely related.

II.

### MOTHER'S ASSIGNMENT OF ERROR

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR IN FINDING THAT IT WAS IN THE CHILDREN'S BEST INTEREST TO BE PLACED IN THE PERMANENT CUSTODY OF [CSB]. THE TRIAL COURT'S DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

### FATHER'S ASSIGNMENT OF ERROR

THE TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT TERMINATED FATHER'S PARENTAL RIGHTS AND GRANTED [CSB'S] MOTION FOR PERMANENT CUSTODY BECAUSE THE TRIAL COURT'S DECISION WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE AND WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶12} Both parents challenge the evidence supporting the trial court's permanent custody decision. Before a juvenile court may terminate parental rights and award permanent custody of a child to a proper moving agency, it must find clear and convincing evidence of both prongs of the permanent custody test: (1) that the child is abandoned; orphaned; has been in the temporary custody of the agency for at least 12 months of a consecutive 22-month period; the child or another child of the same parent has been adjudicated abused, neglected, or dependent three times; or that the child cannot be placed with either parent, based on an analysis under R.C. 2151.414(E); and (2) that the grant of permanent custody to the agency is in the best interest of the child, based on

an analysis under R.C. 2151.414(D)(1). R.C. 2151.414(B)(1) and 2151.414(B)(2); *see also In re William S.*, 75 Ohio St.3d 95, 98-99 (1996). Clear and convincing evidence is that which will "produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." (Internal quotations omitted.) *In re Adoption of Holcomb*, 18 Ohio St.3d 361, 368 (1985), quoting *Cross v. Ledford*, 161 Ohio St. 469 (1954), paragraph three of the syllabus.

{¶13} In considering whether the juvenile court's judgment is against the manifest weight of the evidence, this Court "weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [finder of fact] clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new [hearing] ordered." (Internal quotations and citations omitted.) *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 20. When weighing the evidence, this Court "must always be mindful of the presumption in favor of the finder of fact." *Id*. at ¶ 21.

{¶14} In this case, the trial court found that the first prong of the permanent custody test was satisfied for two alternative reasons: the parents had abandoned the children by failing to have any contact with them for more than one year during this case, and D.S. and L.S. had been in the temporary custody of CSB for at least 12 months of a consecutive 22-month period. *See* R.C. 2151.414(B)(1)(a) and (d); R.C. 2151.414(E)(10). The parents do not dispute either of the trial court's first prong findings but challenge only its finding that permanent custody was in the best interest of D.S. and L.S. In making its best interest determination, the trial court was required to consider the statutory best interest factors, which include: the interaction and interrelationships of the child, the wishes of the child, the custodial history of the child, the child's need for permanence and whether that can be achieved without a grant of permanent custody, and whether any of the

factors outlined in R.C. 2151.414(E)(7)-(11) apply. R.C. 2151.414(D)(1)(a)-(e); *see In re R.G.*, 9th Dist. Summit Nos. 24834 and 24850, 2009-Ohio-6284, ¶ 11.

{¶15} Regarding the parents' interaction with their children, Father points to the positive testimony of the guardian ad litem about a virtual visit she observed in August 2021. He overlooks the significant remaining evidence, however, that the parents' interaction with their two young children during this two-year case was extremely limited. The visit observed in August 2021 occurred after the parents had failed to have any contact with the children for more than one year.

{¶16} Throughout this case, the parents' opportunities for interaction with the children had been confined to supervised visits because they did not comply with the mental health or substance abuse requirements of the case plan. While the parents resided in this area for the first several months of the case, they attended scheduled in-person visits only sporadically.

{¶17} After CSB learned in August 2020 that the parents had moved to Las Vegas, it attempted to arrange virtual visits between the parents and children. By that time, the parents had not visited the children for several months. The parents did not begin attending the virtual visits for nearly one more year, however, several months after CSB had moved for permanent custody, and well over a year since they had last visited the children. They visited virtually between August and November 2021 but missed more scheduled visits than they attended. The parents also made no attempt to contact the children for holidays or their birthdays. Furthermore, it was unknown why they had moved to Las Vegas rather than stay in this area to work on reunification with their children.

{¶18} On appeal, Father points to the fact that Mother's adult child had reached out to CSB and suggested placement of D.S. and L.S. with her parents-in-law, who lived out of state. Mother's older children have no prior relationship with D.S. and L.S., nor do the in-laws of the

oldest child. The agency arranged for in-person and virtual visitation between the children and the older child's in-laws, but the in-laws did not consistently attend the visits. While visiting Ohio, the in-laws missed one of their scheduled in-person visits, which could have allowed for more time to bond with the children. The guardian ad litem opined that there was no bond between the children and the older sibling's in-laws. Moreover, both parents were represented by counsel throughout these proceedings in the trial court, but neither of them had moved for, or advocated for, the in-laws receiving legal custody of the children.

{¶19} In the home of the foster parents, the only home that L.S. has ever known, the children had become closely bonded to the entire family. The children had been living in that home for more than two years. All their needs, including the special needs of D.S. who has a sensory processing disorder, were being met in that home. The foster parents had expressed interest in adopting both children if CSB was granted permanent custody.

{¶20} Because D.S. and L.S. were both under the age of four years old at the time of the hearing, the guardian ad litem spoke on their behalf. She opined that permanent custody was in the best interest of the children because the parents had made no attempt to work toward reunification with the children and the children were doing very well in the foster home.

{¶21} The children's custodial history had included more than two years living in the temporary custody of CSB, which represented most of their young lives. They needed a legally secure permanent placement and CSB had been unable to find any suitable relatives who were willing to provide them with a stable permanent home.

{¶22} Finally, because the trial court had found that the parents abandoned the children under R.C. 2151.414(E)(10), it was required to consider that finding again in its best interest determination. *See* R.C. 2151.414(D)(1)(e). As explained already, the parents moved to Las

Vegas during this case and ceased all contact with their children for more than a year. Although they resumed some virtual contact a few months before the permeant custody hearing, that did not negate their abandonment of these young children for the previous year. *See* R.C. 2151.011(C) (parents who fail to visit or maintain contact with a child for more than 90 days are deemed to have abandoned the child, "regardless of whether the parents resume contact with the child" afterward.).

{¶23} Given the undisputed evidence before the trial court, the parents have failed to demonstrate that the trial court lost its way in determining that permanent custody was in the best interest of D.S. and L.S. Mother's and Father's assignments of error are overruled.

III.

{¶24} The parents' assignments of error are overruled. The judgment of the Summit County Court of Common Pleas, Juvenile Division, is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

LYNNE S. CALLAHAN
FOR THE COURT

CARR, P. J.
SUTTON, J.
CONCUR.

APPEARANCES:

SHUBHRA AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.

JAYSEN W. MERCER, Attorney at Law, for Appellant.

CHRISTINA BOLLMAN, Guardian ad Litem.