OPINION
Appellant, Jerry Ward, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch, terminating his parental rights and granting permanent custody of his children, Minnie Ward and Faith Collins, to appellee, Franklin County Children's Services ("FCCS").
Minnie Ward was born on September 7, 1996, and has spent her entire life in foster care. On February 12, 1997, FCCS filed a complaint under R.C. 2151.04(C) alleging that she was a dependent child because, inter alia, both Minnie and her mother, Reba Taylor, tested positive for crack cocaine at Minnie's birth; Ms. Taylor had a history of drug abuse, unstable housing issues, and serious mental health issues; and appellant, the putative father, was incarcerated. On May 19, 1997, the trial court awarded temporary custody to FCCS. FCCS filed motions for permanent custody of Minnie on November 21, 1997, January 23, 1998, and November 6, 1998.
Faith Collins was born on August 6, 1997, and, like Minnie, has spent her entire life in foster care. On May 20, 1999, FCCS filed a complaint under R.C. 2151.04(C) alleging that she was a dependent child and requesting a permanent court commitment for purposes of adoption. The complaint filed by FCCS alleged, interalia, that Ms. Taylor was incarcerated at the Franklin County Corrections Center; that appellant, the putative father, had been incarcerated since Faith's birth at the Southeastern Correctional Institution on a felonious assault charge in which Ms. Taylor was the victim; that appellant was not due to be released from prison until early 2000; that Ms. Taylor had a history of drug abuse and mental health issues; and that Ms. Taylor had been repeatedly incarcerated and unable to care for Faith. After a hearing on May 21, 1999, the court temporarily placed Faith with FCCS.
Hearings on the permanent commitment matters were held over three days in July and August 1999. The magistrate's decisions granting permanent custody of Minnie and Faith to FCCS were filed on August 23 and 30, 1999, respectively. Appellant filed objections to the magistrate's decision. On December 6, 1999, the trial court rendered a lengthy decision in which it ultimately overruled appellant's objections to the magistrate's decision. Pursuant to an entry journalized the same day, the trial court adopted the magistrate's decision. Appellant has timely appealed to this court, assigning the following as error:
 [1.] The trial court's determinations, under § R.C. 2151.419 that the father was unavailable to work towards reunification and that agency efforts toward reunification would have been futile are based upon insufficient evidence. Accordingly, the trial court violated the father's right to due process under the Ohio and United States Constitutions by permanently terminating his parental rights.
 [2.] The trial court's finding, under R.C. § 2151.414(B), that the minor children cannot and should not be placed with their father within a reasonable period of time is not supported by clear and convincing evidence. Accordingly, the trial court violated the father's right to due process under the Ohio and United States Constitutions by permanently terminating his parental rights.
By the first assignment of error, appellant contends that the trial court improperly terminated his parental rights in that FCCS failed to comply with R.C. 2151.412 and 2151.419. Specifically, appellant argues that the trial court essentially excused FCCS from complying with R.C. 2151.412 and 2151.419 in finding that, due to his incarceration, appellant was unavailable to work toward reunification with his children and that any efforts made by FCCS toward reunification would have been futile.
A children's services agency seeking permanent custody of an abused, neglected or dependent child bears the burden of proving, by clear and convincing evidence, "that it is in the best interest of the child to grant permanent custody of the child to the agency" and, in the case of a child who is not abandoned or orphaned, "the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents." R.C. 2151.414(B)[1]; In re William S.
(1996), 75 Ohio St.3d 95, 99. In addition, the agency must prove by clear and convincing evidence that reasonable efforts have been made to reunite parent and child, or that such efforts would have been futile. R.C. 2151.412 and 2151.419; In re Lawson/ReidChildren (Apr. 18, 1997), Clark App. No. 96-CA-0010. Clear and convincing evidence requires proof that "produce[s] in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." In re Adoption of Holcomb (1985),18 Ohio St.3d 361, 368, quoting Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
Initially, we note that a portion of appellant's argument mischaracterizes the trial court's findings. Appellant contends in his brief that the trial court "concluded that * * * FCCS * * * was not required to include Mr. Ward in the case plan because doing so would have been futile." (Appellant's brief at 3.) Upon a close reading of the trial court's decision, we find that the trial court did not conclude that FCCS was not required to include appellant in the case plan. Rather, the trial court merely discussed the futility of obtaining defendant's signature Con the case plan since he was incarcerated at the time it was filed.
Moreover, the record establishes that FCCS did not exclude appellant from case planning. Once appellant was identified as the father, he was included by name in the case plan. Specifically, FCCS requested that appellant establish paternity and engage in substance abuse assessment and treatment and parenting classes and obtain and maintain appropriate independent housing. The record reveals that appellant was aware that the case plan was in effect, but filed no proposed changes to it. In a February 6, 1999 letter to FCCS caseworker, Jennifer Ostheimer, appellant discussed the status of the case and acknowledged receipt of FCCS semi-annual administrative reviews of the case plan.
We now turn our attention to appellant's contention that FCCS failed to comply with R.C. 2151.412 and 2151.419 in that the agency did not make reasonable efforts to assist him in working toward achieving reunification after he was incarcerated in early 1997. Appellant argues that FCCS terminated attempts to provide for his participation in the case plan after he was incarcerated.
Initially, we note that the evidence establishes that FCCS made reasonable efforts to assist appellant in working toward reunification prior to his incarceration. As noted previously, appellant was included in the case plan filed by FCCS; however, Ms. Ostheimer testified that appellant did not participate in FCCS services and did not cooperate with the FCCS caseworker prior to his incarceration.
With regard to FCCS's efforts to assist appellant after he was incarcerated, he first contends that none of the FCCS caseworkers made any effort to determine the date of his release from prison and that such failure "demonstrates that the agency never meaningfully considered the possibility of Mr. Ward's release and his ability to achieve the goals of the plan within a reasonable time of his release." (Appellant's brief at 4.) However, the record contains no evidence that appellant ever notified FCCS of his release date. In our view, a parent must reasonably be expected to take some initiative in notifying a children's services agency of his/her expected release date from prison and of his/her interest in working toward reunification upon returning to society.
Appellant also contends that FCCS failed to comply with its obligations under R.C. 2151.412 and 2151.419 in that the agency made no attempt to monitor or evaluate the progress he was making toward compliance with the case plan objectives while he was incarcerated. In support of this argument, appellant cites the testimony of two FCCS caseworkers, both of whom stated that they had no contact with either appellant or prison officials regarding appellant's rehabilitative efforts. At the hearing, appellant presented evidence that, while incarcerated, he completed programs in anger management, parenting and substance abuse and took the initial step toward establishing paternity.
As noted previously, Ms. Ostheimer testified that appellant was uncooperative with FCCS caseworkers and did not participate in FCCS services prior to his incarceration. Based on appellant's past behavior, the FCCS caseworkers would have had no reason to believe that appellant would have availed himself of rehabilitative services while in prison. Indeed, appellant had been incarcerated for over two years before he made any attempt to comply with the case plan objectives. Further, appellant has cited no case in support of his proposition that a children's services agency's duty to make reasonable efforts to reunite a parent with his/her children includes the duty to monitor or evaluate a parent's efforts at reunification during a period of incarceration absent contact by the incarcerated parent to make the agency aware of his/her efforts.
Based on the foregoing, appellant's first assignment of error is overruled.
By the second assignment of error, appellant contends that the trial court's findings that the children could not be placed with their father within a reasonable time and that permanent custody is in the children's best interest are not supported by clear and convincing evidence.
R.C. 2151.414(D) provides that when determining a child's best interests, the court must consider all relevant factors, including, but not limited to, the following:
 The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 The custodial history of the child, including whether the child has been in the temporary custody of a public children services agency or private child placing agency under one or more separate orders of disposition * * * for twelve or more months of a consecutive twenty-two month period * * *;
 The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 Whether any of the factors in divisions (E)(7) to (12) of this section apply in relation to the parents and child.
After considering the applicable factors set forth in R.C. 2151.414(D), the trial court determined that the children's bests interests would be served by permanently committing them to the custody of FCCS for purposes of adoption. Appellant challenges the trial court's findings regarding the children's best interests only to the extent that FCCS and the court did not make reasonable efforts to investigate placement with any of appellant's ten siblings.
At the outset, we note that R.C. 2151.353(A)(3) provides that a court may award legal custody of an abused, neglected or dependent child "to either parent or to any other person who, prior to the dispositional hearing, files a motion requesting legal custody of the child[.]" The record reflects that none of appellant's siblings moved for legal custody of the children prior to the dispositional hearing. Accordingly, the trial court was neither required nor authorized to consider a disposition of legal custody with them. In re Marquan Maye (May 4, 2000), Franklin App. No. 99AP-529, unreported. See, also, In re Leonard (Apr. 28, 1997), Butler App. No. CA96-08-146, unreported. (Trial court not required to consider placement with a relative before granting permanent custody to a children's services agency where the child is not orphaned.)
Further, FCCS did make reasonable efforts to place the children with relatives while both parents were incarcerated. Ms. Ostheimer testified that FCCS investigated the three potential caregivers whose names were provided by appellant and that none of these persons were approved as potential placement opportunities. Regarding appellant's siblings, both Ms. Ostheimer and another FCCS caseworker, Tammy S. Jones, testified that they did not investigate appellant's siblings as potential caregivers for the children because appellant had not provided them with the names of the siblings.
Based upon a thorough review of the trial court's decision, we find clear and convincing evidence to support the trial court's determination that the children's best interests would be served by termination of appellant's parental rights and commitment to the permanent custody of FCCS.
Having determined that permanent placement of the children with FCCS is in their best interests, the trial court was then required to determine whether the children could not be placed with either parent within a reasonable time or should not be placed with the parents. R.C. 2151.414(E) provides that in making such a determination, the court must consider all relevant evidence. If the court determines by clear and convincing evidence that one or more of the enumerated factors exist as to each of the children's parents, the court must enter a finding that the children cannot be placed with either parent within a reasonable time or should not be placed with either parent.
The trial court grounded its determination that the children could not be placed with appellant within a reasonable time or should not be placed with him on the following factors:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
* * *
 (13) The parent is repeatedly incarcerated, and the repeated incarceration prevents the parent from providing care for the child. [R.C. 2151.414(E).]
Regarding the first factor, the trial court found by clear and convincing evidence that appellant had failed to substantially comply with the case plan objectives for reunification.
The case plan developed by FCCS required appellant to obtain treatment for substance abuse, complete regular drug testing, obtain independent housing and employment, and take part in mental health and parenting services.
Prior to his incarceration in early 1997, appellant had not participated in the services provided by FCCS and was uncooperative with the FCCS caseworker assigned to work with him. Appellant presented evidence that he participated in numerous programs while incarcerated in an attempt to satisfy the objectives set forth in the case plan. However, the FCCS caseworkers who testified at the hearing asserted that even if appellant availed himself of case plan services while incarcerated, he would still have significant work to do after being released before reunification could occur. Specifically, appellant would be required to submit to random urinalysis screening, participate in a substance abuse aftercare program, and regularly visit the children to acquire and develop parenting skills. In order to accomplish these objectives, appellant would need to cooperate fully in FCCS services to demonstrate his progress toward achieving the goals of the case plan. No evidence suggests that appellant had been willing to cooperate with FCCS prior to his incarceration. As evidenced by the dates of completion on appellant's certificates from prison programming, it was only after appellant had been incarcerated for over two years that he began to participate in rehabilitative programs. Although explanations of such delay could have been given, none are contained in the record.
Appellant maintains that the trial court rejected the importance of his participation in prison rehabilitative services by indicating that he failed to provide evidence of drug screens during incarceration. Appellant contends that the court overlooked the fact that he could not have provided for random drug testing on his own while he was incarcerated. Appellant's argument ignores the fact that the trial court took issue with appellant's failure to provide evidence of drug screens both priorto and after incarceration. Appellant offers no explanation for his failure to provide evidence of drug screens prior to his incarceration.
Appellant also challenges the trial court's conclusion that appellant failed to meet the independent housing and employment requirements of the case plan. Appellant relies on his deposition testimony wherein he stated that he planned to return to work at a car wash and secure housing within ninety days of release from prison in early 2000. However, as noted by the trial court, appellant failed to provide evidence of potential housing or employment. The trial court was unwilling to place the children with appellant without evidence that he could maintain appropriate housing or financial security for his children.
Based on the foregoing, we find clear and convincing evidence to support the trial court's finding that appellant has continuously and repeatedly failed to substantially remedy the conditions which led to the children's placement in FCCS custody.
The court further found by clear and convincing evidence that appellant's repeated incarceration prevented him from providing care for his children. Appellant argues that he was not incarcerated for so long a time as to prevent him from providing care for his children. We disagree.
The record establishes that appellant pled guilty to theft in January 1997 and to felonious assault in April 1997. He was sentenced on the felonious assault charge to three years' incarceration to be served concurrently with the eighteen-month sentence imposed on the theft offense. Minnie was born on September 7, 1996; Faith was born on August 6, 1997. Appellant has been incarcerated for most of Minnie's life and for Faith's entire life. Indeed, appellant testified that he has never seen Faith. Appellant testified that because of his incarceration, he would not be available to care for his children until January 2000. The foregoing constitutes clear and convincing evidence to support the trial court's finding that appellant, due to his repeated incarcerations, has been prevented from providing care for Minnie and Faith.
In conclusion, we find that the record establishes that appellant has been both unwilling (as evidenced by his failure to participate in FCCS services prior to his incarceration) and unable (as evidenced by his repeated incarcerations) to commit himself to the care of his children. Even though appellant exhibited some interest in complying with the case plan objectives in the months preceding the dispositional hearing, such interest is not indicative of his history. Although appellant's efforts are certainly laudable, such "eleventh-hour" efforts fall far short of convincing this court that he has either the desire or the capability of caring for his children.
The record establishes that neither child has ever been in the care of either parent; indeed, both have lived their entire lives in foster care. Appellant visited Minnie only sporadically before he was incarcerated. He has never seen Faith. The children have been placed together with foster parents who have bonded with them and addressed their physical, emotional and developmental needs. The foster parents have expressed an interest in adopting both children.
Viewing appellant's efforts over the entire course of the children's lives, we concur in the trial court's determination that the children cannot be placed with either parent within a reasonable period of time or should not be placed with either parent and that it is in the children's best interest that FCCS be granted permanent custody for the purpose of adoption. As noted by this court in Maye, supra:
 * * * [T]here must be a point of finality where a child can no longer be kept in an uncertain and disruptive environment for an indeterminable amount of time. The child must be given the opportunity to find permanence and stability [Citation omitted.] Permanent placement of a child outside the home is not an abuse of discretion where a parent has historically been unable to comply with a case plan for a period of years, and then comes into court with "clean hands" for a period of a few weeks. [Id. quoting In re Swisher (Apr. 2, 1997), Summit App. No. 17879, unreported.]
Appellant's second assignment of error is also overruled.
Having overruled both of appellant's assignments of error, this court hereby affirms the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, Juvenile Branch.
LAZARUS and KENNEDY, JJ., concur.
[1] Due to the amendment of R.C. 2151.414 on March 18, 1999, the motion for permanent custody of Faith Collins was subject to a different version of the statute than the motion for permanent custody of Minnie Ward. The trial court applied the March 18, 1999 version of the statute to its analysis of both motions. Because the version relied upon by the trial court is substantially similar to the version in effect prior to March 18, 1999, we find no error in the trial court's application of the March 18, 1999 version to both motions for permanent custody.