OPINION
Appellant, Kim Childress, appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, granting to Butler County Children Services Board ("BCCSB") permanent custody of her children, James Lusk and Jean Lusk aka Childress.
James and Jean were born to Kim and James Lusk, but their father has had no involvement with the children. James was born on August 19, 1990, and Jean was born on September 15, 1991.
BCCSB first became involved in 1995 after receiving referrals of physical abuse of the children by Kim's live-in boyfriend, Harry Cook. The investigating BCCSB social worker noticed bruises on James' buttocks and thighs, and both children expressed fear of being with Cook. Eckart Wallisch, a Children's Diagnostic Center ("CDC") evaluator, met with James, who reported that he had been abused and displayed emotional and psychological signs of abuse. BCCSB received temporary custody of the children based upon a finding that they were dependent. Kim admitted that Cook had been abusive toward her and the children.
BCCSB established a case plan to reunify Kim and the children. This case plan included substitute care for the children during the following months, as well as an evaluation of James to determine the extent of his victimization. Both Kim and Cook were to take part in counseling and parenting classes, with Cook taking part in anger management and alcohol assessment programs.
In December 1996, James and Jean were returned to Kim's custody with the condition that she prevent any contact between Cook and the children. At that time, BCCSB amended the case plan to include the no-contact order, as well as additional counseling for Kim, Cook, and the children, and a psychological evaluation of Cook. The amended plan was established in response to Kim's expressed desire to reunite with Cook.
Although Kim made progress with the case plans, she did not complete them. She did find housing and employment, and it was clear that she had a strong bond with the children, but she failed to complete counseling, both individually or with the children. Cook took part only in the psychological evaluation, refusing to take part in any of the recommended counseling and other programs.
In May 1997, it was reported to BCCSB that Cook and Kim were again living together. BCCSB filed a new complaint for temporary custody which was granted. The children were placed with a foster family. In November 1998, the trial court ordered a program for gradual reunification with the intent of returning custody to Kim after a hearing scheduled for January 15, 1999. Two days before the hearing, though, Kim again violated the no-contact order, and the trial court ordered that Kim's visitation with the children be "supervised." The trial court held periodic review hearings over the next two years.
During this time, the children were seen by Sharon Doyle, a certified art therapist. Doyle determined that the children's drawings showed that they suffer from low self-esteem, lack of a nurturing environment, and anxiety. Some of James' drawings displayed physical abuse. While in foster care, the children became less defensive and more confident, which in Doyle's opinion constitutes evidence that foster care and adoption by the foster parents would be in the children's best interest.
Dr. Charles Lee of CDC also evaluated Kim to determine what services would best facilitate her reunion with the children. Dr. Lee had concerns about Kim's dependency and need for attention. Kim was resentful and angry, blaming others for her problems. Kim also felt that Cook had not abused James, but only properly disciplined her son. Counseling was recommended, but Kim failed to attend this counseling. She also missed numerous visits with the children.
After Cook was incarcerated for driving under the influence, Kim repeatedly visited with him in jail. She attempted to deny this fact, but eventually admitted to numerous visits with Cook. After Cook was released and moved to live with his family in Lima, Ohio, Kim moved to Lima to be closer to him.
In the meantime, BCCSB filed a motion for permanent custody of James and Jean on May 20, 1999. A permanent custody hearing was held, and on May 15, 1999, the magistrate filed a decision and entry granting BCCSB permanent custody and terminating Kim's parental rights. The magistrate found that the children's father had abandoned them and that the children could not and should not be placed in Kim's custody within any reasonable time. The trial court found that while Kim had made progress in the case plans, she had not taken part in counseling and she was still involved with Cook, against the order of the trial court and the best interest of the children. The trial court subsequently adopted the decision and entry of the magistrate. Kim appeals, raising a single assignment of error:
 THE TRIAL COURT'S DECISION TO GRANT BCCSB PERMANENT CUSTODY IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.
Kim contends that the evidence at the permanent custody hearing demonstrated that it would be in the children's best interest to be given back to her. She argues that she has a strong bond with her children, and she can properly care for them.
R.C. 2151.414(B)(1)[1] provides:
 Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
(b) The child is abandoned.
 (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.[2]
Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954),161 Ohio St. 469, paragraph three of the syllabus. When the evidence considered pertains to specific statutory findings which the trial court is required to make, the reviewing court must look to see whether the trial court followed the enumerated factors in making its determination, or whether the trial court deviated from the statutory criteria. See Inre William S. (1996), 75 Ohio St.3d 95, 99.
In determining the best interest of a child, R.C. 2151.414(D) provides that the trial court must consider all relevant factors, including but not limited to:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child, or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
When determining whether the child cannot or should not be placed with the parent within a reasonable period of time under R.C. 2151.414(B)(1)(a), R.C. 2151.414(E) provides that the trial court consider relevant factors, including:
 (1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.
* * *
 (14) The parent for any reason is unwilling to provide food, clothing, shelter, and other basic necessities for the child or to prevent the child from suffering physical, emotional, or sexual abuse or physical, emotional, or mental neglect.
* * *
(16) Any other factor the court considers relevant.
 When making its determination, the trial court must consider all relevant evidence. If the trial court finds that any of the R.C. 2151.414(E) statutory factors are present, the trial court must find that the child cannot or should not be placed with the parent. See William S., 75 Ohio St.3d at 98.
In the instant case, the trial court first found that granting permanent custody to BCCSB was in the children's best interest. The trial court set forth extensive findings as to the R.C. 2151.414(D) factors. The trial court recognized that the children share a bond with Kim, but they have also developed close bonds with their foster parents, calling the foster parents "Mom" and "Dad." The foster parents are interested in adopting James and Jean. The children indicated that although they would like to live with Kim, they would do so only if assured that they would not have contact with Cook. Kim has not provided credible assurances in this regard. The children have been in foster care for a significant period of time, and reunification plans have yet to be realized due to Kim's failure to complete the case plans and stay away from Cook.
The trial court found that R.C. 2151.414(B)(1)(d) was applicable as the children have been in BCCSB's temporary custody since May 16, 1997. The children were also in foster care in earlier cases from November 13, 1995 to December 12, 1996.
The trial court additionally found that R.C. 2151.414(B)(1)(a) was applicable, i.e., that the children should not be returned to Kim, or cannot be returned within a reasonable time. Kim failed to take part in counseling. Although she maintained stable employment, Kim moved several times, including to Lima, Ohio to be closer to Cook. There remain serious questions as to Kim's insight regarding the wishes of her children to be away from Cook, such that, according to the trial court, she "has not demonstrated that she fully understands the devastating impact her actions have had upon the children." The court felt certain that Kim would allow Cook to have future contact with the children despite the court order. Kim has also missed weekly visitations up to three times in a given month.
In light of this evidence and the trial court's findings, there was clear and convincing evidence to support granting permanent custody of James and Jean to BCCSB. The assignment of error is overruled.
 ________________________ YOUNG, P.J.
WALSH and VALEN, JJ., concur.
[1] R.C. 2151.414 was amended by House Bill 484 ("H.B. 484"), effective March 18, 1999, before the filing of the instant motion for permanent custody.
[2] R.C. 2151.414, as amended by H.B. 484, included the language "the effective date of this amendment," rather than the specific date "March 18, 1999." The specific effective date was added by H.B. 176, effective October 29, 1999. Because H.B. 176 made no substantive changes to the provisions relevant to the instant case, we use the final amended version for purposes of clarity.