Appellant, Edward Zander, appeals the decision of the Butler County Court of Common Pleas, Juvenile Division, granting permanent custody of his son, Alec Zander, to Butler County Children Services Board ("BCCSB").
Alec was born on November 7, 1997 to Edward and Tracy Zander. On May 4, 1998, BCCSB filed a complaint alleging that Alec was an abused, neglected, and dependent child. BCCSB was given temporary custody of Alec, and he was placed in foster care on May 7, 1998. An adjudicatory hearing was held on January 4, 1999, at which the parties stipulated that Alec was abused, neglected, and dependent.
The reason for Alec's initial removal was injuries that Alec sustained on May 2, 1998, when he was diagnosed with a fractured right humerus bone. Examinations revealed numerous other fractures in various stages of healing. Edward and Tracy had been previously directed to take Alec for x-rays, but they never did so. At the time of the May 2, 1999 incident, Alec's older sister was in foster care due to parenting issues, domestic violence, and Tracy's substance abuse. After Alec's temporary placement, he was diagnosed with severe asthma, requiring constant supervision.
BCCSB, per court order, prepared a case plan to reunite Alec and his parents. The case plan included numerous visits as well as counseling. The plan was an extension of a pre-existing case plan concerning Alec's older sister. Edward was instructed to attend stress management programs to reduce abusive behavior, as well as intensive individual counseling. Edward was granted supervised visits with Alec. Edward regularly participated in visitation, but he undertook none of the recommended counseling. Tracy participated in visitation and counseling until June 1999, after which she had no contact with Alec or BCCSB.
Edward was charged with four counts of child endangering arising out of Alec's injuries. He pled guilty to two counts of child endangering and two counts of attempted child endangering, and was sentenced to fifteen months of imprisonment. Since January 1999, when he entered prison, Edward has had no contact with Alec.
On July 9, 1999, BCCSB filed a motion for permanent custody of Alec. A hearing on the motion was held on November 16, 1999 before a magistrate. Alec's foster mother and treating physician testified, as well as Karen Miller, Edward's sister, and Monica Flores, the social worker overseeing Alec's case. Edward was not released from prison for the hearing, and Tracy did not attend. Alec's appointed guardian ad litem recommended not granting permanent custody at that time.
The magistrate determined that granting BCCSB permanent custody of Alec to BCCSB was in Alec's best interest. The magistrate found that Edward had been convicted of violence against Alec, and that Alec had been in the temporary custody of BCCSB for more than twelve of the previous twenty-two months. The magistrate also found that BCCSB had made reasonable efforts to reunite Alec with his parents, but that these efforts had and would continue to fail.
Edward filed objections to the magistrate's decision. The trial court overruled the objections and adopted the magistrate's decision. BCCSB was granted permanent custody of Alec. Edward appeals, raising a single assignment of error:
 THE TRIAL COURT'S DECISION TO GRANT BCCSB PERMANENT CUSTODY IS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE.
Edward contends that the trial court's decision to grant permanent custody was based solely upon his imprisonment and was not in Alec's best interest. He argues that the trial court's decision is not supported by clear and convincing evidence.
R.C. 2151.414(B)(1) provides:
 Except as provided in division (B)(2) of this section, the court may grant permanent custody of a child to a movant if the court determines at the hearing held pursuant to division (A) of this section, by clear and convincing evidence, that it is in the best interest of the child to grant permanent custody of the child to the agency that filed the motion for permanent custody and that any of the following apply:
 (a) The child is not abandoned or orphaned or has not been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents.
(b) The child is abandoned.
 (c) The child is orphaned, and there are no relatives of the child who are able to take permanent custody.
 (d) The child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.
 Clear and convincing evidence is evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus. When the evidence considered pertains to specific statutory findings which the trial court is required to make, the reviewing court must look to see whether the trial court followed the enumerated factors in making its determination, or whether the trial court deviated from the statutory criteria. See In re William S.
(1996), 75 Ohio St.3d 95, 99.
In determining the best interest of a child, R.C. 2151.414(D) provides that the trial court must consider all relevant factors including, but not limited to:
 (1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster parents and out-of-home providers, and any other person who may significantly affect the child;
 (2) The wishes of the child, as expressed directly by the child, or through the child's guardian ad litem, with due regard for the maturity of the child;
(3) The custodial history of the child;
 (4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency.
 (5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.
 With respect to the determination of whether a child cannot be placed with either parent within a reasonable time, or should not be placed with his parents, the factors to be considered include the following:
 (7) The parent has been convicted of or pleaded guilty to one of the following:
* * *
 (c) An offense under division (B)(2) of section 2919.22 of the Revised Code or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to the offense described in that section and the child, a sibling of the child, or another child who lived in the parent's household at the time of the offense is the victim of the offense;
* * *
 (8) The parent has repeatedly withheld medical treatment or food from the child when the parent has the means to provide the treatment or food, and, in the case of withheld medical treatment, the parent withheld it for a purpose other than to treat the physical or mental illness or defect of the child by spiritual means through prayer alone in accordance with the tenets of a recognized religious body.
* * *
(10) The parent has abandoned the child.
R.C. 2151.414(E). When making its determination, the trial court must consider all relevant evidence. If the trial court finds that any of the R.C. 2151.414(E) factors are present, the trial court must find that the child cannot or should not be placed with the parent. See William S.,75 Ohio St.3d at 98.
The trial court found that granting BCCSB permanent custody of Alec was in Alec's best interest. Tracy has effectively abandoned Alec. Edward and Alec have had no interaction since Edward's imprisonment in January 1999. Alec has developed a close bond with his foster parents and siblings, and his foster parents have undertaken measures to care for his asthma. See R.C. 2151.414(D)(1). Alec has been in foster care since May 7, 1998, which was more than eighteen months at the time of the permanent custody hearing. See R.C. 2151.414(D)(3).
The trial court found that Alec needed a legally secure placement which the foster family could provide. The only other alternative was to place Alec with Miller, his paternal aunt, but Miller's interest in taking care of Alec was not strong because Alec's asthma would be a problem in light of her dog. The record also reflects that Miller is apparently unable to fully understand Alec's needs. See R.C. 2151.414(D)(4). Edward cannot provide a legally secure environment because he is imprisoned for crimes he committed against Alec, and because he failed to seek treatment for Alec when recommended. See R.C. 2151.414(D)(5), (E)(7)(c) and (E)(8). The trial court concluded that the evidence clearly and convincingly established that it was in Alec's best interest that BCCSB be given permanent custody.
Edward disagrees, arguing that he pled guilty to the child endangering charges only to protect Tracy and take blame for her abusive actions against Alec. Even if this is so, it does not change the fact that Edward voluntarily chose to plead guilty to the charges, making R.C.2151.414(E)(7)(c) applicable. It also confirms the trial court's finding that Edward's present lack of contact with Alec is due solely to Edward's own choosing. Edward could have spoken out against Tracy and sought to strengthen his bond with his son. However, Edward chose not to do this, and the trial court found this choice akin to abandonment under the circumstances. Edward's present recantation of his guilty plea, now many months later, need not be given credibility in light of evidence as a whole.
There was clear and convincing evidence that it was in Alec's best interest that BCCSB be given permanent custody. The assignment of error is overruled.
 ________________________ YOUNG, P.J.
WALSH and VALEN, JJ. concur.