DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a judgment of the Lucas County Court of Common Pleas, Juvenile Division, that terminated the parental rights of appellant Michael L. and awarded permanent custody of Makayla, Anthony and Ayden L. to appellee Lucas *Page 2 
County Children Services Board ("LCCS"). For the following reasons, the judgment of the trial court is affirmed.[1]
 {¶ 2} Appellant sets forth four assignments of error:
 {¶ 3} "A. The trial court abused its discretion in finding that the children were in the temporary custody of appellee for twelve of the previous twenty-two months.
 {¶ 4} "B. The evidence presented at trial was insufficient to support a finding that continued, permanent removal of the children from their home was in their best interests.
 {¶ 5} "C. No rational trier of fact could find that the children were unable to be placed with their father, appellant Michael L., within a reasonable period of time.
 {¶ 6} "D. Taking the circumstances as a whole, the trial court's decision is void for violating strong public policy."
 {¶ 7} LCCS became involved with the family in September 2004 after 14-year-old Eleesha, 11-year-old Makayla, and eight-year-old Anthony left their parents' home on their own and went to live with their paternal grandparents due to alcohol abuse occurring in the home. Appellant and his wife also have a son, Ayden, who was then two years old. LCCS began providing services to the family at that time. One month later, an agency caseworker went to the home and found mother drinking while caring for two-year-old Ayden. Mother agreed at that time to place Ayden with his siblings in the grandparents' home. On November 8, 2004, LCCS filed a complaint in dependency and neglect and *Page 3 
request for emergency shelter care because the grandparents were no longer able to continue caring for the children. Emergency temporary custody was given to the agency at that time. On December 15, 2004, the children were found to be dependent and neglected, and temporary custody was awarded to LCCS.
 {¶ 8} Services provided mother by the agency included LCCS casework assistance, diagnostic assessment to determine appropriate mental health services, psychiatric care, a partial hospitalization program for mental illness at Unison, group counseling, the dual diagnosis program at Unison to address both substance abuse and mental health, individual counseling, substance abuse treatment, participation in the Family Drug Court program and visitation with her children. LCCS also assisted with rent and utility payments, helped the family obtain furniture and clothing for the children, and provided summer programs for the children to attend.
 {¶ 9} Appellant was ordered to participate in a substance abuse program and follow all recommendations, obtain a diagnostic assessment to determine appropriate counseling services, participate in individual and family counseling, pay child support, and regularly visit his children.
 {¶ 10} Mother continued to test positive for alcohol through February 2005 but eventually became compliant with her treatment program by June 2005. Father completed his substance abuse program. Based on this progress, the children were returned to the home on June 30, 2005, under the protective supervision of LCCS. Mother was to continue participating in the Family Drug Court program. *Page 4 
 {¶ 11} Almost immediately upon the children's return to the home, mother resumed her abuse of alcohol. On one occasion in August 2005, a Family Drug Court staff member found mother in a highly intoxicated state at home with the children. Shortly thereafter, the agency developed a safety plan for the children, to which both parents agreed, which prohibited any unsupervised contact between mother and the children.
 {¶ 12} In November 2005, the agency filed a motion for shelter care requesting interim temporary custody of the children after a caseworker made an unannounced visit to the home and found mother alone with two of her children in violation of the safety plan. Mother appeared to be passed out on the sofa. The children were removed from the home again and both parents were under a continuing order to comply with their case plan services. Mother failed to participate in any further substance abuse treatment and continued to abuse alcohol. Appellant failed to participate in any further counseling services.
 {¶ 13} Throughout 2006, the agency filed several motions to change disposition due to problems which arose when various placements became unwilling to continue. The children were initially placed with their paternal grandparents, who eventually asked for the children to be removed from their home. A permanent plan was then established providing for legal custody of the children to be awarded to a paternal uncle and aunt. However, by the time of the hearing to determine the motion to transfer custody, the relatives were no longer willing to accept legal custody of the children. Thereafter, a *Page 5 
second permanent plan was established for legal custody to be awarded a couple identified by Eleesha and with whom the children had been living. By the time of the hearing, the couple expressed their desire to adopt the children.
 {¶ 14} In February 2007, the agency again obtained temporary custody of the three younger children while legal custody of Eleesha, by then 17 years old, was returned to her parents under the protective supervision of LCCS. The agency filed a motion for permanent custody of Makayla, Anthony and Ayden in March and a hearing on the motion was held on June 20, 22 and 26, 2007. At the hearing, the trial court heard testimony from two LCCS caseworkers assigned to the family; two chemical dependency counselors with Unison who worked with mother; the director of Family Drug Court as to mother's participation in the program; a friend of the family with whom Eleesha was living at the time of the hearing; appellant's mother; appellant; Eleesha and the children's guardian ad litem. At the conclusion of the hearing, the children's guardian ad litem testified that it was her opinion that it would be in the children's best interest for permanent custody to be awarded to LCCS.
 {¶ 15} By judgment entry filed August 7, 2007, the trial court found pursuant to R.C. 2151.414(B)(1)(a) that the children cannot and should not be returned to the care of either of their parents within a reasonable period of time. The court also found that the children had been in the temporary custody of LCCS for 12 or more months of a consecutive 22-month period. The trial court further found, pursuant to R.C. 2151.414(E)(1), that following placement outside the home and notwithstanding *Page 6 
reasonable case planning and diligent efforts by the agency, both parents have failed continuously and repeatedly to substantially remedy the conditions causing the children to be placed outside the home. The trial court found, pursuant to R.C. 2151.414(E)(4), that both parents have demonstrated a lack of commitment toward the children by showing an unwillingness to provide an adequate permanent home and by failing to participate in services which may have allowed for reunification. Finally, the trial court found that LCCS made reasonable efforts to prevent the need to remove the children from the parents' care and that an award of permanent custody is in the children's best interest.
 {¶ 16} In his first assignment of error, appellant asserts that the trial court's finding that the children were in the temporary custody of LCCS for twelve of the previous 22 months was an abuse of discretion. An abuse of discretion is more than an error of law or judgment; it implies that the trial court's decision was unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1984), 5 Ohio St.3d 217, 219.
 {¶ 17} The record shows that the agency initially received temporary custody of the children in November 2004. The children were returned to their parents in June 2005, seven months later. However, they were removed from the home again in November 2005, and remained in the custody of LCCS for 19 months until the order of permanent custody in June 2007. Therefore, the children were in the temporary custody of the agency for 26 months, 19 of those months occurring in the 22 months between November 2005 and June 2007. *Page 7 
 {¶ 18} Appellant argues that he was prejudiced by many continuances during the time the children were in the agency's custody. Whether the delays were unjustified, as appellant argues, does not affect the accuracy of the trial court's finding as to the duration of temporary custody. We note further that the trial court's decision in this case was based on many factors, not solely on the length of the agency's temporary custody. The trial court's finding was not unreasonable, arbitrary or unconscionable; it was factually correct and clearly supported by the evidence. Appellant's first assignment of error is not well-taken.
 {¶ 19} In his second assignment of error, appellant asserts that the evidence presented at the permanent custody hearing was insufficient to support a finding that an award of permanent custody to LCCS was in the children's best interest. Appellant argues that the children were exposed to substantial emotional stress and harm due to their removal from the home.
 {¶ 20} In granting a motion for permanent custody, the trial court must find that one or more of the conditions listed in R.C. 2151.414(E) exist as to each of the child's parents. If, after considering all relevant evidence, the court determines by clear and convincing evidence that one or more of the conditions exists, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C.2151.414(B)(1). Further, pursuant to R.C. 2151.414(D), a juvenile court must consider the best interest of the child by examining factors relevant to the case including, but not limited to, those set forth in paragraphs (1)- *Page 8 
(5) of subsection (D). Only if these findings are supported by clear and convincing evidence can a juvenile court terminate the rights of a natural parent and award permanent custody of a child to a children services agency. In re William S. (1996), 75 Ohio St.3d 95. Clear and convincing evidence is that which is sufficient to produce in the mind of the trier of fact a firm belief or conviction as to the facts sought to be established. Cross v. Ledford (1954), 161 Ohio St. 469, paragraph three of the syllabus.
 {¶ 21} This court has thoroughly reviewed the record of proceedings in this case, from appellant's first involvement with LCCS in 2004 through the hearing on the motion for permanent custody. The trial court's decision in this case is thoughtful and thorough, and addresses all of the relevant evidence along with the applicable statutory law in detail.
 {¶ 22} Pursuant to R.C. 2151.414(D), in determining whether an award of permanent custody is in the children's best interest, the trial court noted that as of the time of the hearing, mother was still unsuccessful in controlling her alcohol abuse. The court noted that the oldest child, Eleesha, had testified that her mother's drinking had "gotten to her" several years earlier and that she finally had to get away from it. The court expressed concern that the younger children would eventually experience the same pain if confronted with their mother's drinking and with fighting in the home. Additionally, the court noted that while it appeared that the two older daughters had been functioning more as parents than siblings in their relationship with the younger ones, it was not too late for the two younger siblings to enjoy their right to "still be children." The trial court also *Page 9 
noted that appellant's mother had testified that she no longer believed it was in the children's best interest to be reunified with their parents and that she did not believe her son could care for the children and provide them with a stable home. Finally, the trial court acknowledged the children's need for a legally secure permanent placement and recognized the commitment made to the children by the foster parents in their current placement, who were hoping to adopt them.
 {¶ 23} Both LCCS caseworkers as well as the children's guardian ad litem testified that they believed an award of permanent custody was in the children's best interest. The family's original caseworker testified that Makayla, 14, and Anthony, 11, had told her they wished to stay in their current placement as long as they could see their parents occasionally. The current caseworker testified that the children were in counseling, adjusting well to their caregivers and doing well in school. In her supplemental report submitted to the trial court the day prior to the permanent custody hearing, the children's guardian ad litem noted that the address the parents had given their caseworker the week before the hearing proved vacant and in need of extensive renovations. The guardian reported that neither she nor the caseworker knew where the parents were currently residing. She further reported that the children had adjusted well to their foster home and were excelling in school. The guardian commented that the foster parents appeared committed to raising the children and interacted well with the children's extended family.
 {¶ 24} Based on the foregoing and our review of the entire record of proceedings in the trial court, we find that the decision to grant the agency's motion for permanent *Page 10 
custody is in the children's best interest and was supported by clear and convincing evidence. Appellant's second assignment of error is not well-taken.
 {¶ 25} In his third assignment of error, appellant argues that the evidence does not support a finding that he failed continuously and repeatedly to remedy the conditions causing the children to be placed outside the home. Appellant further argues that the trial court failed to distinguish his conduct from that of the children's mother in this matter and that the trial court "imputed Mother's failures upon him."
 {¶ 26} The trial court found that LCCS made reasonable efforts to prevent the continued removal of the children from their home from November 2004 to the time of the final hearing. The agency referred appellant to substance abuse assessment, a diagnostic assessment to determine what counseling services would be appropriate and to individual and family counseling. Visitations were arranged so that appellant could see his children. Appellant failed to participate in any counseling services after September 2005. The trial court noted that in September 2005, appellant drafted his own case plan in a letter submitted to the court. In his letter, appellant specified various services he believed would be helpful to the family. LCCS had no objection to appellant's plan and attempted to facilitate the services. The trial court found, based on the testimony of the caseworkers, that appellant failed to participate in any of the services he had articulated as appropriate for himself and his wife. The trial court further noted that the agency had developed several plans for the children prior to the request for permanent custody in order to allow time for the parents to work on their case plan services. *Page 11 
 {¶ 27} The record does not reflect that LCCS expected appellant to remedy his wife's alcohol abuse as appellant claims. Both parents were under a continuing order of the court to comply with their case plan services. Appellant was expected to protect his children from their mother and to undergo counseling, yet he did neither. The record reflects that appellant consistently refused to separate from mother.
 {¶ 28} The original caseworker testified that the children initially were removed from the home when Ayden, then two years old, was found alone in the care of his mother, who was intoxicated, after the three older children had left the home of their own volition to stay with their grandparents. A safety plan instituted at that time prohibited unsupervised contact between mother and the children. Shortly after the children were returned to the home in June 2005, mother began drinking again and a safety plan similar to the first one was established. In August 2005, a staff member from Family Drug Court went to the home and found mother intoxicated with all of the children present. Appellant was home and acknowledged that mother was highly agitated and belligerent. The record reflects that appellant was repeatedly asked to make the protection of his children a priority. Appellant consistently refused to separate from his wife and indicated that his commitment to his marriage was his first priority. Appellant testified that he could not turn his back on his wife and said he needed to support her. He further testified that his wife does not take her psychological medications as ordered and drinks on a daily basis. Appellant admitted that he is not able to predict when mother's drinking might lead to behavior that would put the children at risk. Appellant testified that it was his *Page 12 
pattern when working to give his wife money for things she needed to buy, but acknowledged that she would use the money to buy alcohol. Appellant further indicated his lack of understanding of what would be best for his children when he testified that he has told them that he needs to stay with their mother and that "they understand that this is all about their mother."
 {¶ 29} It is clear from the foregoing that the trial court did not hold appellant to blame for mother's behavior. Addressing appellant at the conclusion of the hearing, the trial court stated, "* * * although you are a loving father, I think you're first a loving husband and I think that you put your wife and her needs before your children's needs." There was sufficient evidence presented to support a finding that appellant failed continuously and repeatedly to remedy the conditions causing the children to be placed outside the home. Accordingly, appellant's third assignment of error is not well-taken.
 {¶ 30} In his fourth assignment of error, appellant asserts that the trial court's decision "is void for violating strong public policy." Appellant does not, however, identify the "strong public policy" that may have been violated in the resolution of this case. His argument in support of this assignment of error appears to be that LCCS "imputed Mother's failures onto him" and punished him by forcing him to choose between his wife and his children.
 {¶ 31} There is simply no evidence that the trial court punished appellant for his wife's problems, as he claims, or imputed her failures onto him. The trial court determined in 2004 that the children were at risk in the home under the circumstances *Page 13 
that existed at that time. The agency developed case plans and attempted over a period of two years to implement services designed to help both parents overcome the problems and obstacles facing them. Appellant failed to comply with the case plan and, in fact, finally admitted to the court that his commitment to his wife outweighed his desire to protect his children. The record reflects that the trial court clearly considered the evidence as it related to appellant's ability to protect and provide for his children separately from the evidence concerning mother's situation.
 {¶ 32} Appellant's attempt to place blame on LCCS or the trial court for violating public policy is rejected and, accordingly, his fourth assignment of error is not well-taken.
 {¶ 33} On consideration whereof, this court finds that substantial justice was done the party complaining and the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed. Appellant is ordered to pay the cost of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.
JUDGMENT AFFIRMED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4. *Page 14 
Peter M. Handwork, J., William J. Skow, J., Thomas J. Osowik, J., CONCUR.
[1] The children's mother has not appealed the trial court's judgment. *Page 1