[Cite as *In re Kai.F.*, 2015-Ohio-4208.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re Kai.F.                                    Court of Appeals No.  L-15-1119

                                               Trial Court No.  JC 13234958

                                               **DECISION AND JUDGMENT**

                                               Decided:    October 6, 2015

* * * * *

James J. Popil, for appellant.

Angela Y. Russell, for appellee.

* * * * *

**OSOWIK, J.**

**{¶ 1}** This is an appeal from a judgment of the Lucas County Court of Common

Pleas, Juvenile Division, that terminated the parental rights of appellant mother, K.F., and

granted permanent custody to appellee Lucas County Children Services ("agency" or

"LCCS").  For the reasons that follow, the judgment of the trial court is affirmed.

{¶ 2} Appointed counsel has filed a brief and requested leave to withdraw as counsel pursuant to *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Under *Anders*, if, after a conscientious examination of the case, counsel finds the appeal to be wholly frivolous, he should so advise the court and request permission to withdraw. *Id*. at 744. This request must be accompanied by a brief identifying anything in the record that could arguably support the appeal. *Id*. In addition, counsel must provide appellant with a copy of the brief and request to withdraw, and allow appellant sufficient time to raise any additional matters. *Id*. Once these requirements are satisfied, the appellate court is required to conduct an independent examination of the proceedings below to determine of the appeal is indeed frivolous; if it so finds, the appellate court may grant counsel's request to withdraw and decide the appeal without violating any constitutional requirements. *Id*.

{¶ 3} In this case, appellant's appointed counsel has satisfied the requirements set forth in *Anders, supra*. This court further notes that appellant did not file a pro se brief in this appeal.

{¶ 4} Accordingly, this court shall proceed with an examination of the potential assignment of error set forth by counsel. We have reviewed and considered the entire record from below, including the transcript of all proceedings and journal entries and original papers from the trial court, as well as the brief filed by counsel. Upon this review, we will determine if this appeal lacks merit and is, therefore, wholly frivolous.

2.

**{¶ 5}** The record reflects that Kai.F., biological child of appellant, was born in August 2013. At the time of the birth, both mother and child tested positive for cocaine and marijuana.

**{¶ 6}** On September 4, 2013, LCCS filed a complaint in dependency, neglect and abuse. An emergency shelter care hearing was held that same day and the agency was granted interim temporary custody of Kai.F. On October 15, 2013, the agency filed an amended complaint with a request for permanent custody of Kai.F. On January 15, 2014, LCCS withdrew the amended complaint filed October 15, 2013, and proceeded on the original complaint filed September 4, 2013, with a goal of reunification. Mother stipulated to the facts of the complaint and to a finding of dependency, neglect and abuse and to an award of temporary custody of the agency. Case plan services put in place included a diagnostic assessment, referral to Unison, completion of an intensive outpatient substance abuse program, resolution of criminal matters related to outstanding warrants in Michigan, parenting classes and securing suitable housing.

**{¶ 7}** On June 25, 2014, the agency again filed a motion for permanent custody. The matter proceeded to a final hearing on November 14, 2014, and March 17, 2015. By journal entry filed April 7, 2015, the trial court granted permanent custody of Kai.F. to LCCS. In its judgment entry, the trial court found, pursuant to R.C. 2151.414(B)(1)(a) and 2151.414(E)(1), (2), and (11), and by clear and convincing evidence, that Kai.F.

3.

could not and should not be placed with either parent within a reasonable time and that, pursuant to R.C. 2151.414(D), an award of permanent custody to LCCS was in the child's best interest. It is from that judgment that mother appeals.

{¶ 8} Appellant's counsel sets forth the following potential assignment of error:

The trial court erred in granting appellee Lucas County Children Services permanent custody as the decision was against the manifest weight of the evidence.

{¶ 9} In granting a motion for permanent custody, the trial court must find that one or more of the conditions listed in R.C. 2151.414(E) exist as to each of the child's parents. If, after considering all relevant evidence, the court determines by clear and convincing evidence that one or more of the conditions exists, the court shall enter a finding that the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(B)(1). Further, pursuant to R.C. 2151.414(D), a juvenile court must consider the best interest of the child by examining factors relevant to the case including, but not limited to, those set forth in paragraphs 1-5 of subsection (D). Only if these findings are supported by clear and convincing evidence can a juvenile court terminate the rights of a natural parent and award permanent custody of a child to a children services agency. *In re William S.*, 75 Ohio St.3d 95, 661 N.E.2d 738 (1996). Clear and convincing evidence is that which is sufficient to produce in the

4.

mind of the trier of fact a firm belief or conviction as to the facts sought to be established. *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus.

{¶ 10} The record in this case reflects that the trial court heard extensive testimony from several witnesses on behalf of the agency. Mother also testified on her own behalf.

{¶ 11} Scott Bieniek, a therapist with Unison, testified he worked with mother when she attended group therapy in the intensive outpatient program beginning November 2013. Mother indicated to Bieniek that her drugs of choice were cannabis and cocaine. He became mother's primary therapist in March 2014, at which time he attempted to get mother into aftercare treatment. Mother never fully engaged in that level of care and eventually dropped out of aftercare. Mother told Bieniek that she failed to comply because she had gone to Michigan, where she experienced some legal issues which included incarceration, and developed some medical issues which resulted in hospital stays. Bieniek requested verification of those events and mother eventually showed him papers which documented only one or two days of activity in Michigan during the prior six weeks. He never received full verification for the situations mother reported. At that time, mother was returned to the intensive outpatient program but was removed "quite shortly" because she was causing problems within the group. In June 2014, one of mother's urine screens tested positive for cocaine; on three other occasions in May and July, she refused to provide a urine sample. Mother never completed the substance abuse program and was discharged for non-compliance in July 2014.

5.

{¶ 12} Donita McGuire, a drug and alcohol counselor, testified that she admitted mother into the IOP program in October 2013 and was currently mother's primary therapist. Mother completed IOP and moved into aftercare in November 2013. She attended aftercare and appeared to be doing well until she started missing sessions in the end of January 2014. McGuire stated that mother never fully engaged, which is why she was referred back to IOP for a three-week session in June 2014 after a positive drug screen for cocaine. Mother did not complete the IOP session, which led to her being discharged from Unison in July 2014. McGuire re-admitted mother in August 2014 and referred her back to IOP for at least three more weeks in order to verify that she was sober. Mother was again noncompliant, only meeting with her therapist one time before getting into an argument and being reassigned to McGuire. Initially, mother did well with McGuire, but she became noncompliant at the end of September 2014. Mother missed group and individual sessions in August, September and November and McGuire was not able to reach her for one or two weeks at a time. Mother tested positive for cocaine in September 2014. Mother told McGuire that she does not use cocaine and that when she tested positive it was because she was making the cocaine and selling it.

{¶ 13} Christina DeSilvis, mother's ongoing caseworker, testified as to the agency's involvement in this case. The agency received a referral in August 2013 after mother came to Toledo and gave birth to Kai.F. Both mother and baby tested positive for marijuana and cocaine. The agency removed Kai.F. due to concerns of substance abuse

6.

and mother's history with child protective services in Michigan. DeSilvis further testified as to her understanding that mother still had an active warrant in Wayne County, Michigan. She stated that mother has a total of seven biological children and that her parental rights as to four of them were terminated by the state of Michigan in 2012. One other child was in the legal custody of a relative and two others, Kai.F. and a newborn, were in the temporary custody of LCCS at the time of the final day of this hearing on March 17, 2015.

{¶ 14} DeSilvis noted that mother's seventh child, born in November 2014, also tested positive at birth for cocaine and marijuana. Mother re-entered the Unison program several days after the baby's birth. She was eventually referred to a trauma group based on her disclosure of trauma and abuse as a child but she only attended one session and was discharged from that group in January 2015. At the time of the hearing, she was enrolled in aftercare but was having problems with attendance and compliance with urine screens. It was the caseworker's understanding that mother had an outstanding warrant in Wayne County, Michigan, at the time of the final hearing. DeSilvis explained that mother was never referred to a parenting class due to her failure to complete substance abuse treatment, which must occur first. DeSilvis also testified that mother had reported some domestic violence in her relationship with a boyfriend. Mother was initially consistent with weekly visitation with Kai.F. in 2013 and early 2014. Her visitations became very inconsistent from April through July 2014 and then improved in August.

7.

DeSilvis testified that mother had her own apartment from November 2013 through February 2015, when she was evicted. When DeSilvis asked mother for her new address, mother was vague and asked her to send correspondence to the old address. At the time of the hearing, DeSilvis did not know where mother was residing.

{¶ 15} DeSilvis eventually located the individual mother identified as the alleged father, but he stated he could not be the father because he had not seen mother since 2012. Mother identified one other individual as a possible father; he attended one staffing at the agency but refused to provide any personal or contact information. Mother did not identify any other alleged father for Kai.F.

{¶ 16} DeSilvis testified that Kai.F. was currently in foster care and that his needs were being met. Based on mother's inability to maintain sobriety for a significant period of time or make other necessary progress, the agency's goal at the time of the hearing was permanent custody for adoption.

{¶ 17} DeSilvis testified that mother's compliance with substance abuse treatment has been very inconsistent and said she had received reports as recently as two weeks before the hearing that mother was refusing drug screens.

{¶ 18} Mother testified that she had attended parenting classes on her own through Toledo Ministry and that she attended seven trauma group sessions. She further testified that she had been prescribed Zoloft following a diagnosis of severe depression and Oxycodone for pain resulting from an automobile accident. She was about to begin

8.

employment at a local store and stated she had not told her prospective employer about her outstanding warrant in Michigan on a charge of retail fraud.

{¶ 19} Lastly, the child's guardian ad litem testified as to her recommendation that permanent custody be granted to LCCS.

{¶ 20} By judgment entry filed April 7, 2015, the trial court found, pursuant to R.C. 2151.414(B)(1)(a) and R.C. 2151.414(E)(1), (2) and (11), by clear and convincing evidence, that Kai.F. is not abandoned or orphaned and cannot and should not be placed with either parent within a reasonable period of time.

{¶ 21} Pursuant to R.C. 2151.414(E)(1), the trial court found that mother has failed continuously and repeatedly to substantially remedy the conditions causing Kai.F. to be placed outside the home. The court further found: Kai.F. tested positive for cocaine and marijuana at birth; mother failed to successfully complete the required aftercare program for substance abuse; mother repeatedly refused to comply with drug screen requests; mother tested positive for cocaine and marijuana at various times during this case; mother has a long history of substance abuse, and could not be referred to parenting services due to the lack of progress in substance abuse services.

{¶ 22} As to R.C. 2151.414(E)(2), the trial court found that mother has a chronic emotional illness so severe that it makes her unable to provide an adequate permanent home for Kai.F. at the present time and, as anticipated, within one year after the hearing. Additionally, pursuant to R.C. 2151.414(E)(10), the trial court found that Kai.F. has been abandoned by the father and that no person has come forward to establish paternity.

9.

{¶ 23} The trial court found, pursuant to R.C. 2151.414(E )(11), that mother has had her parental rights involuntarily terminated with respect to siblings of Kai.F. and that she has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, she can provide a legally secure permanent placement and adequate care for the health, welfare and safety of Kai.F.

{¶ 24} The trial court considered all of the best interest factors of R.C. 2151.414(D)(1)(a-e) and found by clear and convincing evidence that an award of permanent custody to LCCS was in Kai.F.'s best interest. Finally, the trial court found that LCCS made reasonable efforts to prevent the continued need for removal of the child from the home and to provide services to the parents and that such efforts were unsuccessful.

{¶ 25} This court has conducted an independent examination of the record pursuant to *Anders v. California.* We have considered appellant's proposed assignment and find no error prejudicial to appellant's rights in the trial court proceedings. We find that the trial court's decision granting permanent custody of Kai.F. to Lucas County Children Services was supported by clear and convincing evidence. Accordingly, appointed counsel's proposed assignment of error is without merit. Appointed counsel's motion requesting leave to withdraw is granted, and this appeal is dismissed for the reason that it is wholly frivolous.

10.

**{¶ 26}** Upon consideration whereof, the judgment of the Lucas County Court of Common Pleas, Juvenile Division, is affirmed.  Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27.  *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.       

_____
JUDGE

Thomas J. Osowik, J.       

Stephen A. Yarbrough, J.     
CONCUR.

_____
JUDGE

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.